GEORGE M. DOUGHERTY, Executor and Trustee under the Will of John Conly, deceased,

*vs.*

MARY R. CONLY, ELIZABETH C. CROZER, GEORGE W. CONLY, HARRY CONLY, MARGARET E. CONLY, Trustee for Frank Conly, and HARRY CONLY, Trustee for William H. Conly.

*New Castle, Feb.* 1, 1924.

Where testator refuses to require trustee to give bond with surety, courts will not, in absence of a showing that trust estate is in danger of loss, require security.

Where testator has left a life interest in a fund with remainder over, without requiring a bond to protect the fund, no court, in absence of proper showing necessitating it, will do so, especially in view of *Revised Code* 1915, § 3353.

Where testator gave daughter seventy-six shares of corporation stock, and directed executor to sell her three hundred and four shares at a named price and take her note in full payment, since testator did not require her to give security or deposit collateral with her note, executor was bound to deliver certificates of stock to her without other security than the note required.

Where testator gave a daughter seventy-six shares of corporation stock, and directed executor to sell her three hundred and four shares and take her note in full payment thereof, such note to be for one year, and to be renewed from year to year at option of daughter, until paid in full, *held* that it was the

intention that she should pay for the stock within a reasonable time, but that seventeen months after the original note was given a reasonable time had not elapsed.

Where a testator directed his executors to sell corporate stock to his daughter on her note, renewable from year to year until paid, and recognized the possibility of partial payments by providing for disposition thereof, if made, the Court of Chancery, on bill by the executor and trustee for instructions, cannot determine in advance what will be a reasonable time for payment of the note, or prescribe a schedule of partial payments.

BILL FOR INSTRUCTION, filed by George M. Dougherty, executor and trustee under the last will and testament of John Conly, deceased, against the defendants, who are all the persons interested in the questions raised by these proceedings.

The portion of the will of John Conly pertinent to the pending controversy is as follows:

"Sixth. I give and bequeath unto my daughter, Elizabeth C. Crozer, seventy-six (76) shares of the capital stock of Conly Bros., Inc., to be hers absolutely."

"Eighth. It is my will and I hereby direct that my executor shall sell to my daughter, Elizabeth C. Crozer, three hundred and four (304) shares of the stock of Conly Bros. Inc., at fifty dollars ($50.00) per share, and I further direct that my said executor shall take the note of my daughter, Elizabeth Crozer, in full payment for the said stock, said note to be for one year and to bear interest at six per cent. (6%) and to be renewed from year to year, at option of the said Elizabeth C. Crozer, until the said note is paid in full."

"Ninth. I hereby give and bequeath unto my sons, George W. Conly, Harry Conly, Frank Conly and William H. Conly, share and share alike, the interest paid by Elizabeth C. Crozer, upon the note given in payment for the three hundred and four (304) shares of the stock of Conly Bros., Inc., and I direct that any principal paid on account of said note be paid in reducing the indebtedness due to George W. Conly and Harry Conly until by such payments the indebtedness due George W. Conly and Harry Conly shall be extinguished, so that so long as there shall be any interest payable by Elizabeth C. Crozer it shall in preference be paid to Frank Conly and William H. Conly."

The testator died September 23, 1921. On November 21, 1921, his daughter, the defendant Elizabeth C. Crozer, elected to purchase the three hundred and four shares of capital stock of Conly Bros., Inc., mentioned in the eighth item of the will at the price therein designated. She gave her promissory note to the com-

plainant as executor and trustee in the sum of $15,200 due in one year in payment therefor. The said shares were thereupon transferred by the executor to the name of Mrs. Crozer but the certificate has not yet been delivered to her. At the time of filing the bill Mrs. Crozer had paid one year's interest on the note and $200 on account of the principal thereof. Since the filing of the bill it is admitted that she has made a further payment of $200 on account of principal and has paid the interest promptly as it fell due.

The four sons demand of the complainant that he retain the custody of the three hundred and four shares of stock as collateral security for the payment of the note and any renewals thereof, and that he demand such additional security as will be adequate to protect the rights of the four sons mentioned in the ninth item in the proceeds of the note. They further demand of the complainant that he fix a definite limit of time for the renewals of the note and that a definite method of cash payments be fixed for the reduction of said note.

The defendant Elizabeth C. Crozer demands of the complainant that he deliver to her the certificate of stock evidencing her title to the three hundred and four shares of stock for which she has given her note, and that he refuse to comply with the demands of her brothers respecting security, fixing a time for payment and a method of cash reductions.

This being the situation, the complainant has filed his bill seeking the instructions of this court as to his duty in the premises.

Heard on bill, answers and oral testimony adduced before the Chancellor.

*Francis De H. Janvier*, for the complainant.

*Caleb E. Burchenal*, for George W. Conly and Margaret E. Conly, trustee for Frank Conly.

*Artemas Smith*, for Harry Conly and Harry Conly, trustee for William H. Conly.

*Philip L. Garrett* and *George W. Lilly*, for Elizabeth C. Crozer.

THE CHANCELLOR. The interpleading answers call for a construction of that portion of the will of John Conly which is quoted

in the above statement of facts. The question as presented concerns solely the right of the defendant, Elizabeth C. Crozer, to receive the stock upon delivery by her of her unsecured note, and the rights of her brothers to have a time now fixed beyond which renewals of her note shall not be granted and a method of cash payments now defined by which she shall reduce and eventually liquidate the note. There are thus two questions at issue. They are, first, as to the matter of security; and, second, as to time of final and intermediate payments.

First, as to security. The solicitors for all the parties agree that John Conly was a man of considerable business experience and of very good business judgment. If to allow his daughter to buy the stock in question and pay therefor her unsecured note would be contrary to the ordinary rules of business and highly imprudent, as is insisted by the solicitors for the brothers, there is this much to be said, viz., that the testator, who must have been aware of this fact, did not see fit expressly to exact security and thus avoid the alleged danger of loss. It must be assumed that a man of his experience fully appreciated the risk, if any, which would attach to his daughter's unsecured paper. Fully appreciating it, he nevertheless chose not to avoid it. He required neither the stock to be deposited as collateral nor additional security to be given. He may have been actuated to this course solely by his trust and confidence in his daughter. Doubtless he was, for she had been engaged in the business of Conly Bros., Inc. with him and his will shows that he was providing a method whereby she might acquire his entire interest in that business. He owned three hundred and eighty shares of the stock of Conly Bros., Inc. He bequeathed to his daughter seventy-six shares in the sixth item and in the eighth item gave her an option to purchase the balance of three hundred and four shares. He evidently had such a high regard for his daughter as a reliable business woman that he desired his holdings in the business which he and his brother had built and owned to remain in her control. Whatever was his motive, he did not require her to give security or deposit collateral with her note which the executor was to take "in full payment for the said stock."

The testator having chosen to omit the requirement of se-

curity, I am now asked to supply it for him. I know of no principle upon which I would be justified in doing so. The risk to the brothers of loss of the principal of the note either by the insolvency of their sister, or by her willful dereliction, is a risk which the testator chose to incur. Mrs. Crozer is not in a position of being the trustee for the fund secured by the note. If she were such trustee, yet she would not be required to give bond as such, for the rule is that where a testator refuses to require a trustee to give bond with surety, relying upon the trust and confidence reposed by him in the trustee, courts will not in the absence of a showing that the trust estate is in danger of loss require the trustee to give security. 39 *Cyc.* 254. Nor is Mrs. Crozer in the situation of one who has a life interest in a fund with remainder over to another. If such were her situation, and if the testator had seen fit not to protect the fund by requiring her to give security, no court in the absence of a proper showing necessitating it would do so. *Gregg v. Bailey*, 120 *Me.* 263, 113 *Atl.* 397; *Copeland v. Barron*, 72 *Me.* 206; *Griffith v. Smith*, 1 *Ves., Jr.* 97; *Fawker v. Gray*, 18 *Ves., Jr.* 131; 1 *Roper on Legacies, pp.* 231, 864. The enactment of 20 *Delaware Laws, c.* 583 (*Revised Code* 1915, § 3353), is an implied recognition of this rule.

Mrs. Crozer is neither a trustee for the note, nor a life beneficiary thereof. Her position is stronger than it would be in either of those situations. She is a purchaser of the stock, the consideration for the purchase being her note. If in the case of a trustee or of a life beneficiary of a fund security would not be exacted by the court in the absence of a showing demanding it, it is more emphatically true that no such security should be exacted of her as a purchaser of the stock.

It is unnecessary for me to discuss whether in any event, whatever the subsequent circumstances might turn out to be, she could be required to give security with this note or deposit collateral with it. If it be conceded that under certain circumstances she could be required to give such security, or deposit such collateral, yet no such circumstances have thus far been disclosed. There is no reason, therefore, why the complainant should not deliver to Mrs. Crozer the certificate for the shares of stock for which

he holds her note "in full payment." If he cannot retain the stock itself as collateral, *a fortiori* he cannot demand other security.

Second, as to payment of the note. The eighth item of the will provides for a sale of stock to Mrs. Crozer. The form of payment is a note for one year "to be renewed from year to year, at the option of the said Elizabeth C. Crozer, until the said note is paid in full." The solicitors for Mrs. Crozer do not take a clear and positive position with respect to the question of how long she may take to pay off the note. I gathered at the argument that they entertained the view that while she has a discretion in the matter, yet this discretion is to be limited by what under the circumstances would be a reasonable time. On their brief, however, they appear to indicate it as their contention that the only purpose of the note was to supply suitable evidence of indebtedness against her estate in case of death. If this be so, then she can never be called upon to pay in her lifetime.

The solicitors for the four brothers contend that Mrs. Crozer must pay the note within a reasonable time. In support of this contention they cite such cases as the folloing: *Lewis v. Tipton*, 10 *Ohio St.* 88, 75 *Am. Dec.* 498; *Smithers v. Junker*, (*C. C.*) 41 *Fed.* 101, 7 *L. R. A.* 264; *Works v. Hershey*, 35 *Iowa*, 340; *Ryan v. Litchfield*, 162 *Iowa*, 609, 144 *N. W.* 313; *Page v. Cook*, 164 *Mass.* 116, 41 *N. E.* 115, 28 *L. R. A.* 759, 49 *Am. St. Rep.* 449. These cases are to the effect that where a note is payable at the convenience of the maker the law considers it payable within a reasonable time.

The instant case is, of course, not a case of that precise kind. Here the question is as to the intent of the testator in directing the sort of note he desired his executor to take in payment for the stock. According to the principle deducible from the authorities cited, if the testator had in his lifetime sold the stock to his daughter and taken a note whose terms corresponded to those indicated in the eighth item of his will, with a privilege of renewal from year to year at the option of his daughter, he could at the expiration of a reasonable time have demanded payment in full, notwithstanding the indefiniteness as to time in respect of renewals. If the law would so construe his as well as his daughter's intent in the making of a note *inter vivos*, it is difficult to see why the same intent should

not be collected from his testamentary language in directing the sort of note he meant his executor to take. It is apparent that the testator did not desire that his daughter should be required to make an immediate payment in full in cash. For reasons of his own he desired her convenience to be consulted in the matter of payment. He desired to allow her time. But it would be in utter disregard of what he must have intended in the way of benefit to his sons, to say that Mrs. Crozer could regardless of all circumstances and out of mere caprice or indifference, liquidate the note according as she might arbitrarily choose. There is nothing in this will which shows that he meant to give the three hundred and four shares of stock to her. She was to pay for them. That is clear. Unless she was to pay within a reasonable time under all the circumstances, her father may as well have bequeathed the shares to her outright. What would be a reasonable time would be governed by circumstances. What circumstances might be considered in fixing such time, I need not now discuss, for, as the case now appears, to do so would be but to speculate. I am convinced that so far as now appears such reasonable time has not yet elapsed. This bill was filed on April 12, 1923, about seventeen months after the original note was given. Mere lapse of time is the only circumstance appearing in the case that bears on the question of reasonableness. Certainly, conceding that the Court of Chancery is the proper tribunal in which to determine the question, this court cannot say that seventeen months is so long a period regardless of all other possible circumstances as to indicate a reasonable time has expired.

I have serious doubt as to whether the Court of Chancery could properly pass upon the question of whether at any particular time the note in question can be said to be due. That question, involving as it does the legal liability of Mrs. Crozer on a promissory note which in turn depends on the reasonableness of the time under all the circumstances during which she is entitled to renewals, would appear on first blush to be a question cognizable in a law court before a jury in a suit on the note. However this may be, and conceding that the question is properly determinable in this forum, I have no doubt, as before stated, that such a reasonable time has not yet elapsed. The complainant, who holds the

note for the benefit of the four brothers, has the responsibility on him to see to it that an unreasonable time is not given. He holds the note as executor and trustee and his handling of it, so far as I can see, must be in accordance with those standards of conduct which attach to persons acting in such fiduciary capacity as he finds himself in.

The suggestion that this court should now fix a time beyond which renewals of the note should not be granted involves a determination of what would be a reasonable time for ultimate payment. It is impossible to do this because the circumstances yet to arise which would determine the reasonableness of time cannot now be forecast. Nor would it be proper for this court to define a method of payments on account of the principal. The testator did not choose to lay down a schedule for payments on account, or in installments. While he did contemplate the possibility of partial payments, yet he did not require them. Unless this court is to assume the right of redrafting the will by adding supplementary clauses thereto, it ought to avoid any attempt to prescribe a schedule for partial payments. Such a right on the present showing cannot be assumed.

The solicitors for the four brothers rely on two general principles in support of their contention. They emphasize first the universally accepted proposition that in constructing wills the testamentary intent is to be gathered from the whole instrument. This principle can be of no assistance in this case beyond reconciling the provision for ultimate payment of the note with the apparent provision for arbitrary discretion in the maker by holding that the payment was meant to be within a reasonable time. The second general principle emphasized by the solicitors for the four brothers is, that a will should be construed in that manner which would make for equality rather than inequality among the children of a testator. I am unable to discover what bearing the principle contended for has upon the question presented by the bill. As to the stock which the testator had in Conly Bros., Inc. (380 shares), one-fifth thereof was bequeathed to the daughter and the note, being the proceeds of sale of the other four-fifths, was given to the four sons in equal shares. Thus each of the five children secured an equal share of the stock or its equivalent. Un-

til the contrary is shown to be true, it must be assumed that the note which the testator directed to be taken in payment of four-fifths of his stock interest in Conly Bros., Inc., was in fact a good note and a safe equivalent for the three hundred and four shares directed to be sold. The direction to the executor was "to sell" the stock and take the note "in full payment." The transaction contemplated was a sale and as soon as the note was given the daughter as the purchaser delivered the full consideration. This note inures to the benefit of the four brothers in equal shares. In place of cash the testator gave them what he regarded as its equivalent. The daughter received seventy-six shares of stock and each of the other four children were to receive what the testator regarded as a cash equivalent to seventy-six shares, viz., a one-fourth interest in the daughter's note. Thus there was no inequality.

The third prayer of the bill is, as follows:

"That this Honorable Court may instruct by its decree, how the said shares of stock shall be held or delivered by your orator, how and under what terms the said note shall be held or renewed by your orator, and how the sums paid or to be paid to your orator on account of the principal of said note shall be paid over or applied, and applied, and may construe the provisions of said will respecting the premises, and may instruct your orator as to the manner in which he may fully and properly perform his duties as executor and trustee under said will respecting the various contentions raised by the beneficiaries and persons interested under the eighth and ninth items of said will."

Answering this prayer the decree will be that the complainant deliver forthwith to Mrs. Crozer the certificate for three hundred and four shares of Conly Bros., Inc., now standing in her name; that the complainant hold the note and consent to renewals thereof for a reasonable time; and that in case any amounts are paid on account of the principal such amounts shall be by the complainant paid over to George W. Conly and Harry Conly in equal parts until the one-fourth interest in the note given to each of them is fully paid, after which time further payments on account of the principal shall be paid in equal shares to Frank Conly and William H. Conly, or their trustees, if any. This direction with respect to application of partial payments is justified by the agreement of the solicitors representing the interpleading defendants that notwithstanding the rather indefinite language of the ninth item, the principal

proceeds of the note, as well as the interest, are to be equally divided among the four sons.

Let a decree be prepared in accordance herewith.