.· ·Essex County Orphans Court—In re ·Kellogg.·

---

ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of LOUISE A. KELLOGG, deceased.

[Decided June 19th, 1925.]

Wills—Construction—Bequests for Life With Power to Dispose of Corpus—Two Bequests in Superficially Similar Language, in First, However, Provision is Made for "Use During Life" With "Such Parts as Shall Not be Used by My Sister, etc.," in the Other the Language is "the Use of" With "Such Parts as May Remain, etc."—Held, Both Bequests Created Life Estates Only, That in the Former the Words "Such Parts as Shall Not be Used, etc.," Entitled the Beneficiary to the Control of the Funds, With or Without Security as the Circumstances Appeared; That the Language of the Other "Such Parts as Remain, etc.," Constituted a Trust, the Words Referring Only to Depreciation of Such Fund.

On petition for decree of distribution.

*Messrs. Howe & Davis,* proctors for the petitioner.

*Mr. Philemon Woodruff,* proctor for the respondent.

KOCHER, ADVISORY MASTER.

Emily Elvira Wright and Robert Russell Wright, two of the legatees under the last will and testament of Louise A. Kellogg, deceased, file their petition for a decree of distribution, which involves the construction of the will of Louise A. Kellogg for the purpose of determining to whom distribution or payment of the legacies should be made.

The pertinent provisions of the will are as follows:

"Second. I give and bequeath unto my sister, Emily Elvira Wright, * * * the sum of five thousand dollars for use during her life, and, at her death, I give and bequeath the sum, or such parts as shall not be used by my sister, unto my nieces, Emily Louise Wright and Clara Dorothy Wright.

"I give and bequeath to my brother, Robert Russell Wright, of Denver, Colorado, the use of two thousand dollars during his life, and, at his death, I give and bequeath the said sum, or such part as may remain, unto my nieces, ·Emily Louise Wright and Clara Dorothy Wright."

Both Emily Elvira Wright and Robert Russell Wright survived the testatrix.

It is to be observed at the outset that both the legacies in question are alike in the following respects. The bequest to the first taker is expressly for life; no express power of disposition over the *corpus* is given to the life tenant, and there is a gift over.

On the other hand, the language of the two bequests differ in these respects. The gift to Emily Elvira Wright is of a fund "for use during her life" and a gift over of "the sum, or such part as shall not be used by her;" the bequest to Robert Russell Wright is of "the use of" the fund during his life with a gift over of "the said sum, or such part as may remain."

As will hereafter be pointed out, the difference appears to be an essential one, and, as a necessary consequence, it becomes necessary to construe the two legacies separately. For purposes of convenience the bequest to the brother, Robert Russell Wright, will be first considered.

The first question to be answered is whether Robert is entitled to the fund outright as an absolute gift.

The subject of gifts of property for life or for an indefinite term, with super-added power of disposition over of the fee or principal, expressly granted or implied, has for years constituted one of the most prolific branches of the construction of wills.

In the first place, it is to be noted that our courts have drawn a fundamental distinction between those cases in which the gift to the first taker is limited expressly for the term of his life, and those in which it is not so limited. In the leading case of *Downey* v. *Borden, 36 N. J. Law 460,* decided by the court of errors and appeals, this rule was enunciated in the following language:

"The supreme court, in the judgment under review, sustained the claim of an estate in fee in Louise Akins [testator's widow] in the one-third part of the premises on the rule of construction that a devise of an estate, generally, with a power to dispose of the same without qualification or limita-

tion, imports such dominion over the property as that an estate in fee is created. The distinction is between a devise expressly for life with a power of disposition annexed and a devise in general terms with such a power annexed. In the former case an estate for life only passes, in the latter, a fee. As a rule of construction the principle is entirely settled that where lands are devised, in the first instance, in language indeterminate as to the quantity of the estate from which an estate for life would result by implication, and words adapted to the creation of a power of disposal without restriction as to the mode of execution are added, the construction will be that an estate in fee is given; but where the quantity of the estate of the taker is expressly defined to be for life, the super-added words will be construed to be the mere gift of a power of disposition."

This rule was applied by the court of errors and appeals to bequests of personality in the case of *Pratt* v. *Douglass, 38 N. J. Eq. 516,* and in *Wooster* v. *Cooper, 53 N. J. Eq. 682, 684.* Chief-Justice Gummere, speaking for that court, used this emphatic language:

"The rule that a devise of an estate generally with a power to dispose of the same absolutely and without limitation imports such dominion over the property that an estate in fee is created and that a devise over is consequently void, has one exception, which is this: That where the testator gives an estate for life only by certain and express words, and annexes to it such a power of disposal, the devisee for life will not take an estate in fee.

"This exception was recognized and enforced by this court in the case of *Downey* v. *Borden, 7 Vr. 460,* and again in the case of *Pratt* v. *Douglass, 11 Stew. Eq. 533,* and in the latter case it is declared to apply to bequests of personal estate as well as to devises of realty. These cases have definitely settled the law on this subject in New Jersey, and the propriety of the rule laid down in them is not open to discussion."

I have been unable to find but a single reported case in this state which appears to be contrary to this rule. In *Courter* v. *Howell, 33 N. J. Eq. 80, 81,* decided in the court

of chancery, which held that "when the interest or income of a fund is given to one for life with a limitation over, and the gift is accompanied with a power to the donee of absolute disposition of the fund during life, the donee will be held entitled to the fund absolutely if he is the equitable owner absolutely."

This case was, however, distinguished in the case of *Reeve* v. *Beekman, 42 N. J. Eq. 613, 619,* on the ground that an express power of disposal had been given to the legatee, the court's comment being that "although, in the first instance, the gift of the $3,000 was for life, the testator expressly provided that if the legatee should elect, it might be invested in a house and lot and the conveyance made to her, which, of course, made it absolutely hers, she having so elected."

From the foregoing it is apparent that there can be no doubt that the courts of this state have unequivocally adopted the rule that a gift of personalty expressly for life, with an absolute power of disposition, gives only a life estate and not an absolute interest.

One point remains to be considered in connection with the question now being discussed, the construction of the word "use." I have been unable to find any reported case in this state construing this word as applied to a bequest of personalty, but the rule stated in *40 Cyc. 1615,* that a gift of the use of property for life gives a life estate, appears to be supported by cases in most of the states and to be questioned by none.

It follows, therefore, that Robert Russell Wright is not entitled to the legacy in question outright as an absolute gift.

The next question to be decided is what power of disposition, if any, over the principal of the legacy is impliedly granted to Robert Russell Wright by the use of the words "such part as may remain?" It is to be borne in mind, in considering this question, that we are here dealing with a gift of personalty alone, not with a gift of both real and personal property, or of real property alone, and with an implied power of disposal, not an express power. There appears to be no reported case in this state dealing directly with this situation.

The case of *Duncan* v. *Murphy, 92 N. J. Eq. 682,* decided by the court of errors and appeals, appears to be the latest reported case dealing with implied power of disposal. In this case Vice-Chancellor Leaming, whose opinion was adopted as that of the court of errors and appeals, used the following language :

"The various decisions relating to the force to be given to langauge which may imply a right to sell and appropriate the proceeds of sale in a gift which is expressly for life, and which is followed by a gift over of the residue, will be found to be almost universally resolved on the special circumstances of each case. Where the gift has been of personal property only the word 'residue' or 'remainder' contained in the gift over has been deemed to refer only to possible loss from use or from shrinkage of investments, and, in consequence, importing no right of the life tenant to sell; where the gift has been wholly of real estate, there appears to have been no escape from the conclusion that the 'residue' referred to in the gift over related to land not disposed of by the devisee, and, in consequence, imported a right upon the part of the life tenant to sell. The case of *Bryan* v. *Bryan, 61 N. J. Eq. 45,* was of that nature, but where the gift has included both real and personal property, greater difficulties have been presented which have, as a rule, resolved on some special feature of the case, the tendency, apparently, being to regard the words 'residue' or 'what remains' contained in the gift over as referring to loss or shrinkage of the personalty arising from use or depreciation of investments in the absence of anything indicating to the contrary in any part of the will. *Richards* v. *Knight, 64 N. J. Eq. 196,* was of that class, although in that case the words 'what shall remain,' as there used in one clause of the will, were deemed to refer to personalty by appropriate grammatical construction."

It may be contended that the language used in the case just cited, as applied to the facts in the present case, is only *dictum,* but in the absence of any authority to the contrary, or of any ground for questioning the soundness of the rule enunciated, I think that the rule laid down in that case should

be considered as controlling the case now under consideration, and I accordingly find that Robert is not entitled to expend any part of the principal of the legacy of which he is the life tenant, and that the words "such part as may remain" refer to a possible loss from shrinkage of investments.

The next question to be considered is whether Robert is entitled to receive from the executors the fund itself or only to be paid the income thereof during his lifetime.

It would appear that this question is answered by the case of *Howard* v. *Howard, 16 N. J. Eq. 486, 487,* where the court used the following language:

"The rule is that where there is a general bequest for life with remainder over the whole must be sold and converted into money by the executor, the proceeds invested, and the interest only paid to the legatee during his life.

"The rule prevails except where there is an indication of an intention on the part of the testator that the legatee for life should receive the property bequeathed."

In the case of *Ott* v. *Tewksbury, 75 N. J. Eq. 4, 7,* Vice-Chancellor Emery said:

"The general rule in relation to payments or delivery to the life tenant of personal property or the principal, to the income or use of which he is entitled for life, is the one declared by Lord Eldon in the leading case of *Howe* v. *Earl of Dartmouth (1802), 7 Ves. 137,* that where personal property is bequeathed for life with remainder over in general terms and not specifically, the property is to be converted and invested by the executors and the income only paid to the life tenant. This general rule has been approved in so many cases in this state as to have become a settled rule of construction and it must prevail, unless there be in the will an indication of contrary intention, and that the tenant for life is to enjoy the possession of the property *in specie* and is given specifically * * *."

In the case of *McDonald* v. *Irvine (1877), 8 Ch. Div. 101,* where the general rule and the effect of these cases on its application was considered, it was concluded by the court of errors and appeals that it was altogether a question of a

fair and reasonable. construction of the will in reference to the intention of the testator that the property in question was to be enjoyed *in specie,* and that the general rule requiring conversion was not to be applied. And it was said by Lord Justice Thesiger (at *p. 122*) that in every case where such intention was found to exist (except one which was referred to as having gone almost to the extreme length consistent with the existence of the rule at all) there were either words in their natural and literal sense importing use or enjoyment of the property in the state in which the testator left it at his death, or directions contained in the will as to the conversion which were inconsistent with a conversion by the court taking place upon the death of the testator. And it was further held to be the result of the cases (Lord Justice James at *p. 124*) that it was quite clear the rule in *Howe* v. *Dartmouth, supra,* must be applied, unless upon a fair consideration of the will you find sufficient indication of intention that it is not to be applied * * *. This is the principle to be applied here * * *, the test being, as I think it should be, whether the will, fairly considered, indicates such intention that such an intention that the property in question is specifically bequeathed and to be enjoyed *in specie* as to make the general rule for conversion inapplicable; to the same effect are *Ackerman* v. *Vreeland, 14 N. J. Eq. 23, 27; Rowe* v. *White, 16 N. J. Eq. 411, 416; Parker* v. *Moore, 25 N. J. Eq. 228, 238,* and *Helme* v. *Strater, 52 N. J. Eq. 591, 601.*

In the case of *In re Van Wagoner's Estate, 97 Atl. Rep. 893,* there was a bequest to the granddaughter of "the sum of $2,000 during her natural life, and, after her decease, to her issue, but if she dies without issue, then I give and bequeath the same to my son, William, and my daughter, Letitia, to be divided equally between them." At page 895 of the opinion Vice-Chancellor Foster, sitting as vice-ordinary, after quoting the rule in *Ott* v. *Tewksbury,* said that—

"Personal property, including money, may be bequeathed for life with limitation over, and, if the estate is given in money, the donee is entitled to the interest and income only, and the principal is retained by the trustee or executor." *Har-*

*rison's Executors* v. *Stockton's Executors, 19 N. J. Eq. 235.*

Applying the rule in *Ott* v. *Tewkesbury, supra,* to the facts in the case now under consideration, I am unable to find that "the will, fairly construed, indicates such an intention that the property in question is specifically bequeathed and to be enjoyed *in specie* as to make the general rule for conversion inapplicable."

It follows, therefore, that the fund in question should be retained by the executors as trustees in trust to invest the sum and to pay the income thereof to Robert Russell Wright during his lifetime, and, at his death, to distribute such part thereof as remains to the residuary legatees named in this paragraph of the will.

Taking up now the legacy for the benefit of Emily Elvira Wright, and considering the same questions as those just considered in connection with the legacy for the benefit of Robert Russell Wright, it is at once apparent that the first question, namely, whether she is entitled to the fund outright as an absolute gift, must be answered in the same way as in the case of Robert, and for the same reasons and in this connection I am unable to differentiate, so far as the application of the rule hereinbefore quoted from *40 Cyc. 1615,* to the effect that a gift of the use of property for life gives a life estate is concerned, between the words "the sum of $5,000 for use during her life" used in the bequest to her, and the words "the use of $2,000 during his life" used in the legacy to Robert.

To the second question, however, namely, what power of disposition, if any, over the principal of the legacy is impliedly granted, the answer, it would appear, must be different from that in the case of Robert. It is true we are also dealing with a gift of money alone, but to apply in this case the rule hereinabove quoted from *Duncan* v. *Murphy, 92 N. J. Eq. 682, supra,* to the effect that the words meaning residue or remainder refers only to possible loss from shrinkage of investments, would be to disregard the plain, natural meaning of the words "such part as shall not be used by my sister."

Essex County Orphans Court—In re Kellogg.

In this case, as in all other cases of construction of wills, the court should never lose sight of the cardinal principle, the fundamental rule of all the rules of construction, that the intention of the testator, as expressed in the will, is to be given effect so far as it is possible to do so, in the very terse and epigrammatical language quoted by Vice-Chancellor Backes in *Smith* v. *Wagner, 91 Atl. Rep. 599,* "the intention of testator is the law of wills."

The necessary and unavoidable implication of the words used by the testatrix is that Emily is to have the power of using such part of the principal of the fund during her lifetime as she may see fit. To construe them otherwise would be to disregard their sense, and to make, not to construe, the testatrix's will. We may reconcile the result reached with the rule laid down in *Duncan* v. *Murphy, supra,* by pointing out that here the testatrix has gone further than to use merely a word meaning residue or remainder. She has used words meaning a residue or remainder after the life tenant has herself spent such part of the fund as she desires, and "resolving the decision on the special circumstances of the case," to quote from the language of the opinion in *Duncan* v. *Murphy, supra,* the intention of the testatrix thus expressed must be given effect by the court. It follows, therefore, that Emily is entitled to use so much of the principal of her legacy as she may see fit to do.

Taking up in turn the third question considered, whether or not Emily is entitled to receive from the executors the fund itself, it necessarily follows that here also the answer must be different from that in the case of Robert. Here, in the language of *Ott* v. *Tewksbury, supra,* the will, fairly construed, does indicate such an intention that the property in question is specifically bequeathed (in the sense that the word "specifically" is used in that case) and to be enjoyed *in specie,* as to make the general rule inapplicable; here, in the somewhat appropriate language of *Howard* v. *Howard,* there is an indication on the part of the testatrix that the legatee for life should receive the property bequeathed. The intention of the testatrix that Emily is to have the privilege

of expending such part as she pleases of the principal of the legacy can be given full effect only if the fund is paid into her hands, and that should accordingly be done.

It may be observed at this point that the fact that the result of the foregoing findings is to give fundamentally different effects, so far as the interests of the two life tenants, are concerned, is not to be overlooked. It might well be argued that we have here a testatrix making provisions for an aged brother and sister, in each case giving to him or her the use of a fund during his or her lifetime with remainder over to others, and that, consequently, she intended that whatever interest the one took in her fund the other should take in his. Indeed, counsel for both the petitioners and the respondents, in their arguments based on the relative ages, financial situations and relationship to the testatrix of the life tenants and remaindermen of the legacies in question tacitly take this position, and at first blush it might seem to have some foundation. However, assuming that the relations of the life tenants as to financial and other resources and as to relationship to the testatrix—of course, not in the sense of consanguinity—were precisely the same, and that there is little difference in their ages, yet the testatrix had the unqualified right to provide lavishly for the one, and insufficiently, or not at all, for the other. It is trite law that, subject only to compliance with the familiar requirements of the statute, every testator may dispose of his property absolutely as he pleases and without regard to any moral or ethical consideration.

It is what the testator has done, not what he should have done, or might reasonably have been expected to do, that the court is called upon to decide, and it is, as has already been said, the testator's intentions expressed in his will that is to be given effect and none other, and, therefore, in this case, if it be said that the intention of the testatrix was to provide for her brother and sister alike, the complete answer is that she has not expressed that intention in her will. On the contrary, the will itself contains, at least, two quite significant indications that she did not intend to provide for the brother

and sister alike. The first is that the amount of the gift to the sister is two and one-half times that of the gift to the brother. The second is that the language of the two bequests, while superficially similar, is, as has been heretofore pointed out, different throughout, and it must be remembered that we are not here dealing with a literary composition where the rules of rhetoric would explain an avoidance of alliteral repetition conveying the same meaning in two separate passages, but with a legal document where accuracy is essential. It seems an inevitable conclusion that the only object the testator could have had in using different phraseology in the second bequest was to express a different intention toward the second legatee. It must be apparent that when a testator, in disposing of two sums of money to two different beneficiaries, uses entirely different language in the gifts, there must be, in the absence of other indications to the contrary, a presumption that he intended to express different intentions with regard to the respective beneficiaries and the interests to be taken by them.

Having found that the executors should pay over to Emily Elvira Wright the principal of the fund bequeathed to her as life tenant, the question may be raised as to whether she should be required to give security under the provisions of *3 Comp. Stat. p. 3089 § 8.*

An examination of the statute and of the reported cases on the subject leads to the conclusion that this question cannot be disposed of at this time for two reasons—*first*, because it has not been properly raised, and *second,* because, if it had been properly raised, the evidence necessary to determine it is not before the court. At the outset it is to be noted that the statute in question is permissive, not mandatory. It does not require either the demanding by the executor or the giving by the legatee of security in any case. So far as concerns the executor, it imposes no duty and prescribes no liability, but grants a privilege. As was said by Vice-Chancellor Foster, sitting in the prerogative court, in the case of *In re Van Wagoners, 97 Atl. Rep. 893, 895.*

Essex County Orphans Court—In re Kellogg.

"Our statute concerning legacies provides that an executor shall not be compelled to pay or deliver the property bequeathed to a person for life until security shall be given to the orphans court having jurisdiction over such executor's accounts, in such sum and form as, in the judgment of the court, shall sufficiently secure the interest of the person or persons entitled in remainder."

In the case of *In re Ryerson, 26 N. J. Eq. 43,* it was held that the statute under consideration does not make it obligatory on the executor to require security, but leaves it to their discretion. To the same effect is *Dodson v. Sevars, 52 N. J. Eq. 611,* and *53 N. J. Eq. 347; McDermott v. Zimmerman, 89 N. J. Eq. 215; Howard v. Howard, 16 N. J. Eq. 486.*

From an examination of the cases above cited it is perfectly clear that it lies, in the judgment and discretion of the executor, to be exercised in good faith and with reasonable care, whether or not he shall demand security from the legatee for life, as in all other matters pertaining to the administration of the estate. In general, no personal liability can attach to him, unless he acts in bad faith or negligently, and that not until after the executor has demanded security has he jurisdiction to determine and decree what amount and what form or security will sufficiently protect the interest of the remaindermen, and, of course, the judgment of the court must be based upon and determined by the facts and circumstances of the case to be brought before it, as in all other cases, by competent evidence.

I will advise a decree in accordance with the foregoing conclusions.