EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Executor of James Pennetto, Deceased,

*vs.*

ROSE PENNETTO, ELWOOD J. PENNETTO, ADELINE · PENNETTO, and EQUITABLE TRUST COMPANY, a corporation of the State of Delaware, Trustee for Adeline Pennetto and Elwood J. Pennetto under the will of James Pennetto, deceased.

*New Castle, July 25, 1928.*

*Robert H. Richards*, for complainant.

*William Prickett*, for Rose Pennetto, Elwood J. Pennetto, and Adeline Pennetto.

*Charles F. Richards*, for Equitable Trust Co., trustee for Adeline Pennetto and Elwood J. Pennetto under the will of James Pennetto.

THE CHANCELLOR. The will of James Pennetto provides *inter alia* as follows:

"Second: I give, devise and bequeath all my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I may be entitled at the time of my death, unto my wife, Rose Pennetto, to have and to hold the same for and during the term of her natural life, or until she marries, if she shall remarry.

"It is my will and desire that my said wife shall keep my personal estate invested, from time to time, in good, safe, interest bearing securities, and keep the principal of the same intact, appropriating to her own use the income arising therefrom; provided, however, if she shall absolutely need a portion of the principal for her maintenance and support, that then she have the right to use such portion of the principal as she may so need, during her natural life or until she shall remarry, as aforesaid."

Having so provided, the testator in the third, fourth, fifth, sixth and seventh items proceeds, at and upon the death of his wife and upon her remarriage, if she should remarry, to give all of his estate, real, personal or mixed to Equitable Trust Company in trust upon certain contingencies for his daughter, Adeline and his son, Elwood J., or their children or grandchildren, or certain nephews and nieces.

The testator's widow and his son and daughter, both of age, are living. They, with Equitable Trust Company, trustee, are the defendants in the cause.

The executor has passed a final account of the personal estate and has in hand $26,231.13 subject to the provisions of the will just referred to.

The executor desires to be instructed as to the disposition it should make of the said fund, particularly as to whether it should pay the same over to the widow without requiring surety to be given by her that the fund shall be kept safe for the ultimate remaindermen, or whether a trustee should be appointed to whom the fund could be paid in trust for the widow for life with

remainder over to those entitled upon the happening of the contingencies specified.

The widow and her two children take the position that neither should a trustee be appointed nor surety required; that the widow is entitled to receive the fund and handle it under the terms of her late husband's will.

It is clear that the widow's interest is simply one for life. It is equally clear that the interest of the two living children is a contingent one in remainder. Under certain eventualities their children or grandchildren, or nephews and nieces of the testator, may turn out to be the parties in remainder entitled to take. The position taken by the two children in their answers in harmony with their mother's contention ought not therefore to be taken as conclusive of the question involved. The trustee is a party and in behalf of ultimate remaindermen insists that either a trustee should be named to hold the estate during the life of the widow as provided by *Section* 3357, *Revised Code* 1915, or that if no trustee is appointed under said section, the ultimate beneficiaries in remainder should be protected by requiring bond with approved sureties to be given as a condition precedent to payment over of the estate by the executor to the life tenant, the widow. Said *Section* 3357 of the *Revised Code* of 1915 is as follows:

"3357. *Sec.* 24. WHERE WILL APPOINTS NO TRUSTEE TO ADMINISTER LIFE INTERESTS IN PERSONALTY; CHANCELLOR MAY APPOINT; EXECUTOR OR ADMINISTRATOR C. T. A. MAY APPLY; DUTIES OF TRUSTEE; TERMINATION OF TRUST; RELEASE.—When any person, other than the person, who during life, shall be entitled under the will of any deceased testator to the income on the personal estate of such deceased testator or any part thereof, shall be the executor or administrator *cum testamento annexo* of the estate of such deceased testator, such executor or administrator *cum testamento annexo* may, if no trustee is named in such will, after having passed his or her final account of administration on the estate before the Register of Wills, petition the Chancellor for the appointment of a trustee to receive from such executor or administrator *cum testamento annexo* the fund to which the person named in the will is entitled during his or her life; said trustee shall manage and invest said fund, and pay over to the person, entitled for life to said fund, the profits and income arising thereout; and after the death of the person entitled for life, shall pay the fund to the person entitled absolutely. The trust shall determine upon the death of the person entitled during life to said fund, and the re-

lease of the person entitled absolutely to said fund shall discharge and release the trustee from all liability for or concerning the same."

The original enactment of this section was by act approved March 9, 1899 (*21 Del. Laws, c.* 295). It is important at this stage to inquire—what is the purpose of the statute?

The complainant as executor, who is also trustee in remainder after the termination of the widow's life interest, contends that the purpose of *Section* 3357 of the *Code* is the protection of executors and administrators *c. t. a.* in those cases where a life interest in personalty is created with remainder over, for, it is argued, without the statute, an executor or administrator *c. t. a.* would be liable to the remaindermen for loss if at the termination of the life interest a deficiency should appear due to mismanagement, waste or squandering by the life tenant. If, before the enactment of the statute, there was no such risk of liability on the part of executors as the contention assumes, it follows of course that the purpose of the statute could not have been as is contended. I ask then the question—was there any such risk of liability resting on testamentary representatives which the statute was designed to relieve against?

This question, so far as I know, has never been answered by any reported case in this jurisdiction. What in the absence of statute is the rule, where there is a general gift of personalty, not of specific chattels, for life with a gift over at the death of the first taker? The Chancellor in *Williams, Adm'r., v. Floyd, Adm'r.*, 12 *Del. Ch.* 256, 112 *A.* 377, stated that it was generally held to be that the property should be converted into money, the principal invested and preserved for the remainderman, the life tenant receiving only the income. Under this general rule, an executor of course could not be subjected to any risk of liability by reason of the wrongful conduct of a life beneficiary in those cases to which the rule applies.

But there are other cases, however, where the general rule referred to by the Chancellor in *Williams, Adm'r., v. Floyd, Adm'r.*, does not apply. Those are cases where a specific chattel is given for life, which cases, as indicated by the statement of the general rule above referred to, constitute an exception. In like category are the cases, of which many may be found in the books, where a

general gift of personalty is made in such terms that courts, in obedience to the manifest wishes of the testator as disclosed by his will, are forced to say that inasmuch as the testator wished the fund to be turned over to the possession and control of the life tenant trusting solely to the latter's good faith and integrity, it should be turned over without surety or other guaranty for the protection of the remainderman. The following cases cited by the solicitor for the Pennettos are of this type: *Colburn v. Burlingame*, 190 *Cal.* 697, 214 *P.* 226, 27 *A. L. R.* 1374; *In re Ungrich*, 48 *App. Div.* 594, 62 *N. Y. S.* 975; *Presbyterian Church v. Mize*, 181 *Ky.* 567, 205 *S. W.* 674, 2 *A. L. R.* 1237; *In re Kelley*, 250 *Pa.* 177, 95 *A.* 401. See, also, *In re Kellogg's Estate*, (*N. J. Orph.*) 129 *A.* 742, for a review of the New Jersey cases bearing on the subject. The principle underlying these cases was given an analogous application by this court in *Dougherty, Ex'r., v. Conly, et al.*, 14 *Del. Ch.* 176, 123 *A.* 401. Now, I take it that in cases of this kind, if the fund is turned over to the life tenant to be enjoyed in specie in accordance with the testator's wish, no liability could possibly arise against the executor, because in turning over the fund he had faithfully complied with the testamentary direction.

It follows therefore that there was nothing in the way of liability on the part of executors and administrators *c. t. a.* under the law as it existed prior to the act of March 9, 1899 (*Section 3357, Revised Code* 1915) which called for an act to relieve against. Some purpose other than that assigned by the complainant must then be sought for as intended to be subserved by the act.

That purpose, in my opinion, was not the protection of executors and administrators *c. t. a.*, but the protection of remaindermen. Unless this be so, one is at a loss to explain the occasion for the enactment. The explanation thus suggested is confirmed by the legislative history of the act. As originally enacted in 1899, its language was identical with the language since embodied in *Section* 3357 of the *Revised Code* of 1915. In the original act it appeared as a part of *Section* 1, which amended *Chapter* 583, *Volume* 20, *Laws of Delaware*, by adding four new sections thereto, the section under discussion being called by the amending act *Section* 5 of *Chapter* 583, *Volume* 20, *Laws of*

*Delaware*. Turning to *Chapter* 583, *Vol.* 20, *Laws of Delaware*, approved May 29, 1897, to which the present *Section* 3357 of the *Code* was added as a new *Section* 5, we find a recital which clearly shows the purpose of the Legislature in the enactment of the first legislation touching the general subject in hand to have been to safeguard against "leaving all those in remainder unprotected by sufficient and satisfactory bond or bonds." To be sure the first act, the one found in *Volume* 20, provided for the giving of ample security. But the only case covered by that act was the case of an executor or administrator *c. t. a.* who was himself the life beneficiary, and whose administration bond was *functus officio* after a six-year period of limitation. Such a case as we are now considering was not covered by the *Volume* 20 legislation, for here the case is one where the life tenant is not the executor or administrator *c. t. a.* The addition of provisions covering that sort of case to the act whose recitals clearly show a regard for the protection of the rights of remaindermen, is highly significant as indicating that the legislative policy was one of solicitude in behalf of remaindermen and their protection against possible loss occasioned by the dereliction of persons whom testators were disposed to trust as temporary custodians as well as beneficiaries of estates. To be sure, a scheme of trustee-ship, instead of one of bonds with sureties as in the other case, was devised to meet the needs of the new one. A bond might just as well have been required. But that is a matter of detail which it was the province of the Legislature to pass upon, and the particular manner of passing upon it which was adopted in no wise indicates the purpose of the Legislature to have been other than as just stated.

The foregoing discussion of the purpose which *Section* 3357 of the *Revised Code* 1915 was designed to meet, while somewhat tedious, is justified because the ascertainment of the section's purpose has much to do with its application.

Conceding its purpose to be as stated, it would appear to be clear that the Legislature intended to impose upon the law of wills a rule to the effect that if a testator chose to bestow life interests in personalty upon persons other than executors or administrators *c. t. a.* with remainders over, and made no use of

the agency of a trustee to protect the ultimate interests bequeathed in remainder, his neglect to do so might, in cases appealing to the executor or administrator *c. t. a.* as proper, be repaired by application to the Chancellor. As before indicated, cases in which a life estate in personalty is created in favor of one not an executor or administrator *c. t. a.* with remainder over, fall into two classes: (a) Where the executor is to hold and preserve the estate for the remaindermen, paying only the income to the life beneficiary; and (b) where the estate is delivered by the executor to the life beneficiary to be held and managed by him in specie with the duty to preserve it for the remaindermen. In both of these cases, the remaindermen are in danger of suffering a loss. In the first, because the period of limitation on a testamentary bond, the executor or administrator *c. t. a.* not being a life tenant, is only six years from its date and the estate may have to be kept open far beyond that period; and in the second, because the life beneficiary may appropriate the estate to his own personal use or otherwise waste it. The one case calls as much for protective measures in behalf of the remaindermen as does the other. The only defect in the efficacy of the remedy provided by the Legislature lies in this, that in both cases the invoking of the remedy is left to the discretion of the executor. I do not, of course, overlook the fact that even without a statute, if improper conduct on the part of either the executor or the life tenant could be shown, appropriate proceedings would be available under the general law for its effective correction and for its further avoidance. But such proceedings oftentimes are fruitless. They may constitute nothing more in effect than the old one of locking the stable after the horse has been stolen. The statute in question is intended, I conceive, to operate as a prevention against the possibility of loss at the outset and does not contemplate the necessity of showing the occurrence of loss in the past or a probability of its arising in the immediate future. The only weakness in it is, as stated, that it leaves its remedy at the mercy of the executor. This is certainly unwise in the class of cases above referred to as (a) where the executor is the party against whose supposed wrong conduct the statute needs to be invoked, and in the other class above referred to as (b) the provision ought to go further by

admitting parties interested in remainder to make the application as well as the executor who, it is conceivable, might through indifference or connivance refuse to resort to the statute.

But, however, the procedure with whatever flaws may inhere in it is the one adopted by the Legislature and as such is a part of the law. The fact that it may not be effective to reach all imaginable cases, constitutes no helpful aid to its interpretation.

In the instant case, if it were not for the statute, I think there can be no doubt that the executor would be bound to turn the fund in hand over to the widow, the life tenant, to be held and enjoyed by her in specie. The language of the will by which she is directed to have and hold the same, to keep the same invested and to keep the principal intact, and by which she is authorized, in case her absolute needs of maintenance and support require, to use the principal, all indicate the intent of the testator to have been that the life tenant and not the executor should handle the fund. In the absence of a proper showing justifying the same, I know of no rule of law by which she could be required to give security bond for the estate's protection while in her hands. Nor in the absence of the statute could she be ousted from control by the appointment of a trustee.

Such would have been the result in the absence of the statute. But in the presence of the statute the result must be otherwise, for the case comes within its language. Here we have an estate for life in personalty in favor of one not an executor or administrator *c. t. a.* with remainder over to others and the will appoints no trustee. In that situation the statute is imposed upon the will and a trustee might upon application by the executor be appointed. If the testator had desired it otherwise he might have satisfied his desire by naming the life beneficiary as trustee for herself and the remaindermen. Not having named a trustee, the statutory provision may be invoked. If the testator had named his widow, the life beneficiary, as executrix, she could be required under the original act of 1897 (*Volume* 20, *Del. Laws*, *c.* 583) to give bond with surety sufficient to protect the estate, notwithstanding the testator had waived the requirement of an administration bond. It is difficult to believe that the Legislature in enacting an amendment to said act to cover the case where the life beneficiary is

not the executor or administrator *c. t. a.*, meant the protection to remaindermen to be any the less demandable.

The solicitor for the life beneficiary argues that the language of the will shows by implication that the testator created his widow a trustee and therefore that the act is not applicable. I do not so construe the will. The direction that she should have and hold the estate, keep it invested and intact, use the income and in case of need spend the principal, constitutes nothing more than a mere direction that she should enjoy the estate in specie. That is, however, the very thing which the policy of .the law as expressed by the statute denies to her.

It is further argued that if a trustee is appointed under the statute the powers conferred upon the trustee can be only such as the statute specifies and among the powers so specified there is none which would authorize the expenditure of principal for the widow's maintenance and support in case of need. If so, it is argued, the statute cannot be adjusted to the testator's wish which is controlling. This contention is not acceptable because the statute, I think, in its terms is broad enough to warrant the view that in the management of the fund the trustee may be authorized to expend it in accordance with the will's directions.

The point is also made that even if a trustee could be appointed under the statute, the matter lies in the discretion of the Chancellor, and that no reason for the appointment being shown, such as the insolvency or unfitness of the life tenant, the Chancellor should refuse to make the appointment. Cases are cited in support of this contention. They are not in point, however, for the reason that *Section* 3358 of the *Code* provides that when application for an appointment is made under *Section* 3357 the Chancellor "shall appoint a trustee," etc. The language is mandatory.

The foregoing disposes of the case in so far as the question of the court's power to appoint a trustee is concerned. Touching the other question which the bill puts in the alternative, viz., whether, if no trustee is named, the life tenant should be required to give bond with surety as a condition precedent to the receipt of the fund, the answer if necessary to be given would, in the

absence of a showing of facts justifying the requirement, be in the negative.

While there is power in the court to appoint a trustee, yet none can be appointed under the pending bill. The executor must petition the Chancellor as provided by *Section 3357* of the *Code. In re Kellogg*, (*N. J. Orph.*) 129 *A*. 742. The foregoing views touching the meaning and application of the statute might have been reserved for expression upon the filing of such a petition. The argument, however, called for their expression and it seemed appropriate for the court to deal with the subject in anticipation of the filing of the petition which, it is to be assumed, will follow.

The decree will advise the complainant that the execution of those provisions of the will designed to take effect after the death or remarriage of the life beneficiary, Rose Pennetto, may be insured by application under *Section 3357* of the *Revised Code* of 1915 for the appointment of a trustee.

Decree accordingly, costs on the estate.