## FAIRCLOTH v. McCLISTER.

### No. 6454.

Circuit Court of Appeals, Third Circuit.

July 23, 1937.

684

Robert K. Bell, of Ocean City, N. J., for appellant.

Horace Greeley Eastburn, of Wilmington, Del., for appellee.

Before THOMPSON and BIGGS, Circuit Judges, and MARIS, District Judge.

BIGGS, Circuit Judge.

The plaintiff-appellant, Charles A. Faircloth, is the receiver of the Chelsea-Second National Bank & Trust Company of Atlantic City, a national bank which was declared insolvent by the Comptroller of the Currency upon January 27, 1933. Pursuant to authority vested in him by law, the Comptroller on February 27, 1933, made an assessment upon shareholders of an amount equal to the par value of the stock of the bank held by each. Among those assessed is the appellee, Alice C. McClister. The suit at bar is brought to collect the assessment.

The facts are as follows: Mrs. McClister's deceased husband, Absalom Cordery, at the time of his death, upon September 3, 1909, was the owner of ten shares of the capital stock of the Second National Bank of Atlantic City, which by merger with the Chelsea National Bank of Atlantic City and the Atlantic County Trust Company became the Chelsea-Second National Bank & Trust Company of Atlantic City; the insolvent herein. The ten shares of stock at the time that Mrs. McClister passed her account as executrix were distributed and she took possession of them under the terms of the will. By May 1, 1934, at the time of the filing of this suit, the ten shares of stock, by reason of stock dividends and the merger referred to, had become sixty-six shares of the stock of the insolvent. The stock has stood upon the books of the banks in the name of "Absalom Cordery," or "Estate of Absalom Cordery." Dividends paid upon the stock after Cordery's death were issued and made payable to the estate of Absalom Cordery and were indorsed by Mrs. McClister as executrix and remitted to herself as life tenant under the provisions of the will. The pertinent provisions of Cordery's will are as follows:

"I give, devise and bequeath to my wife, Alice Cordery, all the estate, real personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my decease, wheresoever the same may be located, for and during the term of her natural life, and from and immediately after her death, I give, devise and bequeath all of my said estate to our son, Edward R. Cordery, his Heirs and Assigns forever. My said wife, Alice, to use the income only of my said estate for her support and maintenance and the support, maintenance and education of our said son, during her lifetime; and I hereby direct and authorize my said wife at any time to sell and dispose of, at public or private sale, the whole or any part of my said real or personal estate, to such person or persons, for such price, and upon such terms and conditions as she may think proper, and to grant and convey the same to the purchaser or purchasers thereof, his, her or their Heirs or Assigns forever, fully and as freely as I could have done if living, and free and discharged from liability to see to the application, or for the nonapplication of the purchase money. And the money arising from such sale or sales to invest in some safe securities at interest, and to be held and used by her as hereinabove provided, and at her death, to go to our said son, Edward R. Cordery, as hereinabove provided.

"I nominate and appoint my said wife, Alice Cordery, to be the Executrix of this, my last Will and Testament, * * *"

The learned trial judge found that the appellee was the executrix and trustee under the will and as such trustee had power to sell the stock. The appellee strongly urges that she is a trustee and as such is not liable individually. The appellee does not now deal with the stock as executrix since she passed her account twenty-seven years ago, but, admittedly, if Mrs. McClister holds the stock as trustee, her liability, pursuant to the provisions of section 5152 of the Revised Statutes (12 U.S.C.A. § 66), would be as trustee and the sum of the judgment would be payable solely from the trust res in her hands. Since Mrs. McClister was sued as an individual and not as executrix or trustee, the trial judge further held that the question presented was whether or not by virtue of Mrs. McClister having a part life interest in the stock under the will she is thereby rendered liable as a shareholder to contribute her part of the assessment. The trial judge decided this question in the negative.

We hold that Mrs. McClister is not a trustee, but simply has a life estate. Since the testator died domiciled in Delaware, the terms of his will must be construed in accordance with the laws of Delaware. We

find the decision of the learned Chancellor of that state in Equitable Trust Company v. Rose Pennetto et al., 16 Del.Ch. 218, 142 A. 827, most persuasive. In that case Pennetto bequeathed to his wife, Rose, all of his property "for and during the term of her natural life, or until she marries." The will provided that the testator's wife should have the income from the securities in which the estate was to be invested, but further provided that, if she needed a portion of the principal for her maintenance and support, then she should use that necessary portion of the principal. The will further provided that upon the remarriage of Mrs. Pennetto the entire estate should go to the Equitable Trust Company, as trustee in trust upon certain contingencies, for the testator's son and daughter. The executor, the Trust Company, passed its final account and prayed the Chancellor for instructions as to the disposition of the funds in its hands, and particularly whether it should pay the funds to the widow without requiring surety to be given by her to the end that the funds should be kept safe for the ultimate remaindermen, or whether a trustee should be appointed to whom the funds should be paid in trust for the widow for life and remainder over to those entitled thereto. Section 3357 of the Revised Code of Delaware 1915 provides in effect that, where a will appoints no trustee to administer life interests in personalty, the Chancellor may appoint a trustee for the purpose of protecting the remaindermen. This statute has the effect of creating a trust by operation of law, the trust being terminated upon the death of the life tenant. It was the contention of the widow and the two children that the language of the will was such that a trust was created and therefore, since there was an express trust, section 3357 of the Revised Code of 1915 was not applicable. In ruling upon this contention the Chancellor stated in part as follows: "The solicitor for the life beneficiary argues that the language of the will shows by implication that the testator created his widow a trustee and therefore that the act is not applicable. I do not so construe the will. The direction that she should have and hold the estate, keep it invested and intact, use the income and in case of need spend the principal, constitutes nothing more than a mere direction that she should enjoy the estate in specie." The Chancellor thereupon decided that he would order the appointment of a trustee under the statute.

In the case of Hinger, Sr., Executor of the Estate of William F. Hinger, Deceased, v. Elizabeth M. Hinger et al., 17 Del.Ch. 62, 149 A. 430, the testator devised and bequeathed his residuary estate to his wife "for and during the term of her natural life," with power to sell such of the property as she might deem to be desirable and to reinvest the proceeds of the sale. After the death of the wife, the property was to be divided between the brothers and a sister of the testator in such shares as the will indicated. The learned Chancellor stated as follows:

"What is the interest of Mrs. Hinger in her late husband's residuary estate? It is clear in the first place that she has only a life estate. The will admits of no other construction. Even if a power of disposal be conceded to her, yet such power could not have the effect of defeating the remainder over by impliedly enlarging the life interest to an absolute one. * * * That ruling is in harmony with the general principle which, says Sugden in his work on Powers (Vol. 1, p. 123), must be conceded, viz., 'that the law does not incline to enlarge express estates by implication.'

"There can thus be no doubt but that the interest of Mrs. Hinger is only one for life."

These decisions are most persuasive in convincing us that Mrs. McClister is not a trustee and is the holder of a life estate, but there are other reasons which appear from the terms of the will itself: First, the language used in the will is apt for the creation of a life estate in Mrs. McClister, and a clear and absolute life estate is given to her; second, no language is used by the testator which tends in any respect to reduce, lessen, or cut down that estate; third, that language is not apt for the creation of a trust; fourth, there are no provisions for the division of income between mother and son and it is entirely apparent that the testator intended that payments to the son were to be within the absolute discretion of Mrs. McClister.

Is the appellee liable because of her life estate in the stock for her portion of the assessment? Section 5151 of the Revised Statutes, 12 U.S.C.A. § 63, provides: "The shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association, to the ex-

tent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares; except that shareholders of any banking association now existing under State laws, having not less than five millions of dollars of capital actually paid in, and a surplus of twenty per centum on hand, both to be determined by the Comptroller of the Currency, shall be liable only to the amount invested in their shares; and such surplus of twenty per centum shall be kept undiminished, and be in addition to the surplus provided for in this Title; and if at any time there is a deficiency in such surplus of twenty per centum, such association shall not pay any dividends to its shareholders until the deficiency is made good; and in case of such deficiency, the Comptroller of the Currency may compel the association to close its business and wind up its affairs under the provisions of Chapter four of this Title."

In his opinion the District Judge found that Mrs McClister was not a shareholder in the sense either of having or the right to have a certificate of stock issued to her or in the sense of having the right to share in the assets of the corporation upon dissolution. That the aliquot portion of the assets of the corporation, representing the shares held by her under Cordery's will, upon the dissolution of the corporation would be paid to the appellee, we have no doubt. Nor do we doubt her right to compel certificates of stock to be issued to her in her name, since she has the right to receive the dividends of this stock and to sell the shares under the will of the testator. She does in fact hold the shares of stock, but the question is whether or not she is a shareholder within the terms of the statute.

The appellant cites a number of cases to support his position that Mrs. McClister is liable for the assessment. The appellee attempts to distinguish these from the case at bar by reason of certain differences in circumstances. We will discuss the three cases upon which the appellant principally relies.

The case of Blackmore v. Woodward (C.C.A.) 71 F. 321, 322, is the reverse of the case at bar. Its pertinent facts were as follows: A testator bequeathed to his wife "for life or widowhood" forty shares of the stock of a national bank with certain other personal property, and provided that she might use or consume any of the person-

al property left her for her comfortable support, and upon her death or remarriage whatever remained of the estate should be divided equally among the testator's children. His administrator c. t. a. caused the stock to be transferred on the books of the bank to the widow. Upon the bank becoming insolvent, an assessment followed. A judgment was procured against the widow, which she did not satisfy, and the receiver of the insolvent bank brought suit against the administrator to compel payment from the general estate of the deceased. Judgment was rendered for the administrator and against the Comptroller. Chief Justice Taft, then a Circuit Judge, delivering the opinion of the court, stated:

"The stock was severed from the bulk of the testator's property by the operation of the will from the death of the testator, and was specifically appropriated, with its increase and emolument, for the benefit of the wife during her life or widowhood. * * * From that time on, the beneficial interest in the stock was in the wife for life or widowhood, the remainder to pass on her death or marriage to the four children of the testator. * * * It is well settled that a bequest of personal property, enjoyment of which can only be had by its manual use, gives to the beneficiary the right of possession and the legal title, and the life tenant holds the property for the benefit of himself during life, and in trust for the remaindermen after his death. * * *. Where, however, the personal property is in the form of stock, the benefits of which are to be derived by the payment of dividends, it is usually held that the executor or administrator may properly hold the title to the stock during the first estate therein, and pay the dividends to the life tenant. This, however, is in the absence of any provisions in the will tending to show that the testator intended the life tenant to have the full legal title to the stock, and to be himself or herself the trustee for the remainderman. Wherever there is anything in the will tending to show that it was a testator's intention to have the life tenant take the title, that intention is to be carried out. We have no doubt that in the present case the testator intended his wife to take title to the stock bequeathed. Our opinion is based on the circumstance that he gave her the right to use the stock absolutely insofar as it might be necessary to render her comfortable. * * * The duty of the adminis-

trator or the executor with respect to the stock was fulfilled as soon as he properly transferred it to the name of the wife on the books of the bank."

The appellee distinguishes the Blackmore Case from that at bar on two grounds: First, the language of Judge Taft that the opinion of the court is based on the circumstance that the testator gave his widow the right to use the stock absolutely so far as was necessary for her comfortable support; and, second, that the stock was transferred to the widow by the administrator. We think that it is immaterial that the stock has not been transferred to Mrs. McClister in the sense that new certificates have not been issued to her in her name. She is in fact the holder of the shares under the terms of the will. The cited case, however, is distinguishable from that at bar by reason of the circumstance directly adverted to by Judge Taft in his opinion.

In the case of John E. Schlener v. Edward R. Davis, Sr. (C.C.A.) 75 F.(2d) 371, 374, 99 A.L.R. 498, certiorari denied 295 U. S. 744, 55 S.Ct. 656, 79 L.Ed. 1690, it was held that the owner of stock in a national bank cannot divest himself of liability for assessment by creating a life estate in the stock for himself with remainder over to his sons, he to receive the dividends during his lifetime, the sons to have the voting rights. The stock was transferred and assigned to the sons, but the certificates were held in escrow in the bank. The appellee endeavors to distinguish the cited case from the case at bar because in the cited case the court said: "a presently completed and out and out transfer was neither intended nor accomplished. The incomplete transfer left the transferor still the actual stockholder, and assessable as such." The distinction in principle between the Schlener Case and the case at bar is very tenuous, if, indeed, there be distinction at all.

The case of Alexander v. Dever, 22 Ga. App. 203, 95 S.E. 756, was decided upon facts very closely analogous to those in the case at bar. Shares of stock in a Georgia bank were subscribed for by James Dever and under his will were bequeathed to Ellen Dever as life tenant. Upon the testator's death the shares of stock were delivered to her. The assessment followed. In the court below a motion was made to dismiss the suit on the ground that the petition stated no cause of action against Ellen Dever. The lower court ruled in favor of the defendant, but was reversed by the Court of Appeals of Georgia, which stated in part in its opinion: "The fact that the defendant is holding the stock as a life tenant of the original subscriber, James Dever, will not relieve her from liability." Section 2270 of the Georgia Civil Code of 1910, under which the assessment in the cited case was made, is very similar in its provisions to section 5151 of the Revised Statutes of the United States, 12 U.S.C.A. § 63. The only ground of distinction between the cited case and that at bar lies in the fact that in the cited case the stock apparently was transferred of record upon the books of the bank to the defendant, and in the case at bar the shares of stock have been delivered to Mrs. McClister, and, though she holds them under the terms of Cordery's will, they had not been transferred upon the books of the bank to her name.

In our opinion Mrs. McClister is a "shareholder" of a national banking association within the terms of the assessment statute. The fact that the shares of stock were not transferred upon the books of the insolvent to her name we deem to be of little importance under the circumstances of the case at bar. Mrs. McClister has possession of the shares as a life tenant, and received the income therefrom under the terms of her deceased husband's will when dividends were paid. That income was to be used for her own support and maintenance and for that of her son, though payments to the son and for the son's account are within the absolute discretion of Mrs. McClister. She has possession and control of the stock and the absolute power to sell or dispose of it. Under all of these circumstances, to hold that she has most of the incidents and benefits of ownership, without the burden of the assessment, in our opinion, would be unjust and inequitable.

We therefore reverse the judgment of the court below and remand the cause, with directions to enter judgment for the appellant.