No. 54.—F. A. BILLINGSLEA, Adm'r, &c. plaintiff in error *vs.* W. B. MOORE, Adm'r, &c. defendant in error.

[1.] When a legacy is given to one who is appointed executor, whether the same be expressed, as in consideration of care and pains or not, the Law presumes that it was given in consideration of services as executor, unless there are words in the will which show that it was founded on a different consideration; and the legacy must fail, if the person so appointed does not qualify as executor. The provision made by our Law for payment of commissions to an executor, though weakening the strength of this presumption, is not necessarily so repugnant as to repel it.

[2.] The general rule is, that parol testimony is inadmissible to explain a will, except by proving the circumstances which surround the testator; his relation to persons and things about him; and this may at all times be done.

[3.] *Semble,* that when the terms of a will are ambiguous and uncertain, parol evidence is inadmissible in proof of the testator's intention, except in all cases of latent ambiguity, and in those cases of patent ambiguity, where it may be used in support of the will, by repelling a legal and technical presumption raised against express terms, where it is offered to rebut an equity or trust raised by implication, and where it is offered to make definite the object of the testator's bounty (the person) or the subject of disposition (the property); it being evident that a bequest has been made by the testator to some person, of one of two or more particular things.

Claim in Taliaferro Superior Court and motion for new trial. Decision by Judge BAXTER, February Term, 1853.

The 4th clause of the will of Alexander Norris, dec'd, was as follows:

"It is also my request, that after the death of my beloved wife, that Frances B. Billingslea has the tract of land whereon I now live, lying west of the road leading from Phillip's bridge to Crawfordsville; also, that the said Frances B. Billingslea have the sum of five hundred dollars paid as his fees for doing the business of the within named."

Frances B. Billingslea was appointed executor, but never qualified; and administration, with the will annexed, was granted to W. B. Moore. After the death of Norris' wife, Moore as administrator, advertised the above named tract of land for sale—and a claim thereto was interposed by Billingslea.

Upon the trial of this claim, the Administrator offered to prove the value of the estate of Norris, for the purpose of showing that the *five* hundred dollars was an inadequate compensation, as fees for the Executor named, in order to strengthen the presumption that the devise of the land was a part of the compensation, intended by the Testator. The Court rejected the evidence. The presiding Judge charged the jury as follows: that "Where a legacy is left to a person by will, and the same person is appointed executor of the will, the Law presumes the legacy to be in consideration of the appointment as executor, even where the will is entirely silent as to the consideration of the legacy; and the presumption of Law must prevail, unless there are words in the will to show that the legacy is founded on a different consideration. And further, that where a legacy is given in consideration of such appointment as executor, the legacy must fail, if the person so appointed does not qualify as such within the legal period."

The jury returned a verdict for the claimant; whereupon the plaintiff below moved a new trial, on the ground

1st. That the jury found contrary to the charge of the Court.

2d. That the Court erred in rejecting the evidence offered.

A new trial was granted upon both grounds, and this decision is assigned as error.

GARTRELL for plaintiff in error.

L. STEPHENS for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

It is the opinion of the Court, that as the record in this case presents the intention of the Testator in the fourth clause of his will contained, the same is not free from ambiguity.

Though from a consideration of the whole will, we incline to think that he designed to devise this tract of land absolutely to the claimant Billingslea; yet we acknowledge that this inclination is not sufficiently great to take the shape of conviction.

As the case has again to be tried, it may serve the purpose of future elucidation, if we give briefly our reasons for this view of the subject. They are as follow:

1. Nothing appears in the will (or the record) to show claims of consanguinity, affinity, or particular friendship, on the testator, in favor of the claimant. The words of the will are, "It is also my request that Francis B. Billingslea has the land", &c. He does not call him either relative or friend in this connection.

2. The clause is not constructed or punctuated, so as to indicate clearly that he designed to give the land absolutely.

3. In looking to this bequest, the technical rule, that when a testator makes a bequest to his executor, it is to be regarded as in consideration of his services as executor, is to be applied.

The above considerations seem to favor the view that the land was given in consideration of the claimant's services as executor.

On the other hand, it would seem fair to infer that the testator did mean to give the land absolutely to the claimant upon the death of the wife:

1. Because the word "paid" in the latter part of the clause is appropriate to the disposal of money, and not appropriate to the disposition of land. So it would not have been entirely appropriate, perhaps, to include land in the term "fees." Cer-

tainly, if we take the several words used in this connection, viz: "To be paid as his fees for his services", &c. and consider them as following immediately after the sum of money stated, they seem inappropriate to the gift of the land.

2. Thus construing the clause, the effect of the technical rule cited is weakened, because this expression of intention specially to give the money as fees for services (the *expressio unius*) seems to exclude the conclusion (the *exclusio alterius*) that the testator intended so to give the land; and thus is furnished the exception to the rule which will be presently stated.

3. The force of the legal presumption involved in this rule is also lessened, though not destroyed, by the fact that in our State, provision is made by law for compensation, by commissions to an executor.

These are the conflicting features which cause us to doubt as to the intention of the testator, and to our minds, involve the same in ambiguity.

[1.] Upon the trial of this case, the Court below was asked by the defendant to give in charge to the jury the following rule, viz: that when a legacy is given to one who is appointed executor, whether expressed to be for care and pains or not, the presumption is that the legacy was given in consideration of the appointment as executor, unless there are words in the will to show that the legacy is founded on a different consideration; and further, that where a legacy is given in consideration of such appointment as executor, the legacy must fail if the person so appointed does not qualify as such. This charge the Court gave substantially.

After a trial and verdict for claimant, a motion was made for a new trial by the defendant in error, which motion was sustained; one of the features of the Court's decision in granting the new trial, being an assertion and repetition of the above rule. To this the claimant excepts, and assigns the same as error.

We think the decision correct. The rule cited is unquestionably a sound, common law rule which is of force in our State. It is true, that our law allows commissions to an executor; but

this provision is not in its nature so repugnant to the rule, as to repeal it. As we have suggested, it is calculated to weaken the force and effect of the presumption created by the rule; but we are not prepared to say that it destroys it. The rule appears to us founded in a reason and a policy not entirely ceasing with the statutory enactment allowing commissions.

It was insisted by the counsel for the defendant in error, that the Court himself should have applied this rule, and have construed the will in the light of it. No exception was taken to the action of the Court in this respect, and the point is not therefore presented to us for decision.

We do not see why the Court should have referred this instrument to the jury for construction, when he had rejected all extrinsic testimony for its elucidation; but we are not called upon to pronounce a formal judgment on this point.

[2.] The Court below also decided that a new trial should be granted, because of error upon the trial in rejecting evidence offered by the administrator, going to show the value of the whole estate of the testator, and that such evidence should have been admitted. To this the claimant excepts, and assigns the same as error.

The general rule upon this subject is, that parol testimony is inadmissible to explain a will, except for the purpose of proving the circumstances surrounding the testator; that is to say, his situation in his relations to persons and things about him.

A Court and jury, in the effort to discover the intention of a testator may as it were, thus put themselves in his place, and ascertain how the terms of the instrument affect the property, or subject-matter. *Doe vs. Martin,* 1 *N. & Mc.* 524. *Brown vs. Thorndike,* 15 *Pick.* 400. 2 *Phil Ev.* 277. 1 *Greenl. Ev.* § 287, 288.

When the Court decided that for the purpose of aiding in the endeavor to ascertain the meaning of the testator, in the 4th clause of his will, proof might be adduced of one of the extrinsic or surrounding circumstances, viz: the amount or value of the whole estate, it was only applying this general rule, and erred not therefore in so doing.

This was not deciding that the language of the testator might be proven to have been different from that appearing in the will; but it was simply saying that the will might be properly read in the light of the surrounding circumstances.

Such testimony was not only proper, but as we have seen, it was needed in this case, in order that the ambiguity which existed in this clause of the will might receive explanation. The fact (if it were so) that the amount of land and money taken together, as bequeathed by this clause of the will, were not disproportioned to the whole amount of the estate, as compensation for the execution of the will, was one of those surrounding circumstances which it will be readily seen might serve to elucidate the inquiry. All the light that can be obtained from these surrounding circumstances, is in our opinion needed, and proof to this effect should be by both sides accumulated.

[3.] The general rule above stated is sufficient to dispose of this case; but the discussion took a wider range, embracing the intricate subject of patent and latent ambiguities; and it may be, possibly, not without service to the future conduct of this case, nor uninteresting to our brethren engaged, for our views on this head to be announced.

We remark then, that to the general rule above stated, there are other exceptions which have been made by Courts. Strictly, and at common law, the only other exception is in cases of latent ambiguity; and in these cases parol evidence of the language or declarations of the testator, going to show what was his real meaning, is allowed.

It is known, that a latent ambiguity is some question of doubt, not apparent (or patent) upon the face, or in the terms of the instrument, but raised by evidence which is extrinsic of the instrument. The familiar example is, where a testator gives to one of his sons his field of Blackacre, and it appears by evidence that he had two fields of that name. Here there is no ambiguity in the terms of the supposed will. They are entirely clear until the proof raises the ambiguity. In such case, similar proof is allowed to dispel the ambiguity, and show which

field; for example, the testator intended, whether North Blackacre or South Blackacre.

It seems fair to suppose that with those who established this rule, the reasoning not only was, that to admit parol testimony in a case of this sort was not by it to alter a written instrument, or to substitute it (the parol proof) in the place thereof, but also that unless this rule had been adopted, the testament in such a case would fail of execution.

This exceedingly technical rule, however, was found in process of time even with the exception specified, to work at great disadvantage. Cases of no little hardship occurred under its influence; and so courts in some cases, to make other exceptions, have borrowed aid from that noble system, the civil law —that noble system constructed by those great men, who were conquering so many technical obstructions in the paths of justice, whilst they were vanquishing the nations of the earth —those great men, who though they conquered the world, yet fell victims to their own appetites and passions, and left that world to grope in darkness for many centuries, in search of plain, simple, and equitable rules of civil action.

These nice distinctions, as to the admission of parol testimony to explain a written instrument, were not adopted by the civil law; and it will be seen in the case of *Hurst and another vs. Beach et al. 5, Mad. R.* 219, that a Court of equity, in some cases of patent ambiguity, will follow the civil law. Influenced perhaps, by the answers of the civilians, Dr. Swabey, and Dr. Lushington, in that case, we find *V. Ch. Leach* holding that whilst " Our primary principle is, that evidence" (parol) " is not admissible to contradict a written instrument, yet in some cases, courts of equity raise a presumption against the apparent intention of a testamentary instrument, and there they will receive evidence to repel this presumption; for the effect of such testimony, is not to prove, that the testator did not mean what he has said, but on the contrary, that he did mean what he has expressed. Thus where the court raises a presumption against a double gift, by reason that the sums and the motives are the same in both instruments (viz: a will, and a codicil) it will re-

ceive evidence that the testator actually intended the double gift he has expressed. In like manner evidence is received to repel the presumption, that a portion is satisfied by a legacy."

The cases put by the learned Vice Chancellor, it will be perceived, illustrate the fact, that courts of equity, invoking the aid of the Civil Law, have trenched upon the Common Law doctrine, above stated, as to patent ambiguities, where the parol evidence supports the words of the will as against a legal presumption, arising out of those words.

It is in this sense, no doubt, that the exception has been made, that wherever there is a resulting trust insisted on in opposition to the legal operation of a will, parol evidence may be used to rebut that equity. *Lady Glanville vs. The Duchess of Beaufort* 1. *P. Wms.* 114. *Gainsborough vs. Gainsborough* 2. *Vern.* 252. *Ambler* 127. 1. *Fonb. Eq.* 203, and cases there cited.

So also it has been held, that where words, aided by evidence of the material facts in the case, are insufficient to determine testator's meaning, Courts of Law in certain special cases, admit extrinsic evidence of intention. These cases are thus defined : where the object of testator's bounty, or the subject of disposition (that is, person, or thing intended) is described in terms, which are applicable indifferently to more than one person or thing, evidence is admissible to prove which of the persons, or things so described, was intended by the testator. (*Guy vs. Sharp* 1. *M. and R.* 602, per lord Brougham. *Millers vs. Travers* 8. *Bing.* 244. *Doe. ex dem. Gord vs. Needs* 2. *M. and W.* 129. See also the able treatise of *Wigram on Wills*, 11, 14.)

An easy illustration of the exception last stated, may be found in the above case of Gord and Needs. The testator in his will, refers to two persons, named George Gord; one the son of George Gord, the other the son of John Gord ; and in a subsequent clause, he makes a bequest to George Gord, the son of —— Gord. Here the Court, (*Parke B.*) allowed parol evidence to show which George Gord was intended to take this latter bequest; saying, that inasmuch as a bequest was made

by the will to one of two persons, it was not making a will for the testator by parol, to show by such evidence, which he desired to take the bequest, certainly given to one of the two by his will.    And parol testimony was accordingly admitted for this purpose.

This class of cases last referred to, seems really to fall within that which Judge Story, in the case of *Piesch vs. Dickinson*, (1 *Mas.* 9) seems to think " An intermediate class of cases partaking of the nature of both patent and latent ambiguities ;" that is to say :  " Where the words are sensible, and have a settled meaning, but at the same time consistently admit of two interpretations,  according to the subject-matter within the contemplation of the parties."

This suggestion of Judge Story may serve to show, perhaps, the reason why some of the distinctions as to patent and latent ambiguities, and explanation of them by parol, seem ill-defined, and tending to run into each other.

In reviewing these decisions, in looking to the evident effort on the part of Courts to escape from what they seem to have considered, the technical tyranny of the Common Law rule, and to seek shelter under the more benign influence of the Civil Law practice, and the inconsistencies in which they thus become involved, we are prepared to sympathize with another remark of Judge Story in the same case, viz : that " It is not very easy to reconcile all the decisions upon the subject of latent and patent ambiguities, and after several efforts, I have found myself unsuccessful in several attempts to accomplish it."

In view of this difficulty, in the mind of even this eminent person, would it not be better that this subject should be simplified by an entire adoption of the civil law rule ?    Would it not be better  that legislation should provide, that *in all cases where a will cannot be executed because of uncertainty*, parol testimony shall be admitted, in explanation of testator's meaning, or intention ?   The objection to this, is that taken from Bacon's Maxims 25, viz :  " That it is calculated to make that pass without writing, which the law appointeth shall not pass, but by writing."

To a certain extent, this would be true ; but it would become so, *ex necessitate rei* (a reason already recognized for departure from strict forms in the execution of certain wills) and less evil probably would result from it, than from the present confusion or difficulty in comprehending delicate, and highly technical distinctions.

Digesting what has been held on this subject, it appears, that when the terms of a will are uncertain, parol evidence is inadmissable in proof of a testator's intention, except in all cases of latent ambiguity, and in those cases of patent ambiguity, where it may be used in support of the will by repelling a legal and technical presumption raised against express terms, where it is offered to rebut an equity or trust raised by implication, and where it is offered to make definite the object of the testator's bounty (the person) or the subject of disposition (the property) it being evident that a bequest has been distinctly made by the testator to some person, and of one of two or more particular things.

Let the judgment be affirmed.