SAMUEL E. HINGER, SENIOR, Executor of the Estate of William Franklin Hinger, deceased,

*vs.*

ELIZABETH M. HINGER, ROSE HINGER, MARY DUNCAN, LOUIS HINGER, ALBERT HINGER and SAMUEL E. HINGER, SENIOR.

*New Castle, Nov. 27, 1929.*

*Henry R. Isaacs*, for complainant.

*W. Thomas Knowles*, for Elizabeth M. Hinger.

THE CHANCELLOR. The pertinent provisions of the will of William Franklin Hinger are as follows:

"Item One: All the rest, residue and remainder of my property and estate of whatsoever kind and character and wheresoever situated, including my two houses known and identified as Nos. 1005 and 1007 Lombard Street, in the City of Wilmington, aforesaid, I give, devise and bequeath to my beloved wife, Elizabeth M. Hinger, for and during the term of her natural life, together with full right, power and authority, in her discretion, according as market or neighborhood conditions may make it desirable, to sell and convey for the best price or prices obtainable, all or any of the real estate of which I shall die seized, it being my purpose and intention that she shall enjoy all the rest and residue of my estate for the period of her life, but that in her discretion she shall have the right to convey in fee simple any or all of my real estate.

"In the event that my said wife at some time during her life shall consider it advisable to sell any or all of my real estate as hereinbefore authorized, and shall, in fact, accomplish such sale, then it is my will and I do direct her to re-invest the proceeds arising from such sale or sales either in good safe securities or in other real estate, in her discretion, and when such proceeds arising from the sale of real estate shall have been thus re-invested it is my will that she shall continue to enjoy the same for the remainder of her natural life and that thereafter such securities or such real estate shall enure to the benefit of my brothers and sisters as hereinafter specifically provided.

"Item Two: After the death of my said wife, I give, devise and bequeath all the rest, residue and remainder of my estate of whatsoever kind and character and wheresoever situated, to and among my brothers and sister, to them, their respective Heirs, Executors, Administrators and Assigns forever, in the shares hereinafter indicated, namely, to my sister, Rose Hinger, one-half of said rest and residue and the remaining one-half in equal shares to my sister Mary (Hinger) Duncan, and my three brothers, Louis Hinger, Albert Hinger and Samuel E. Hinger, Sr., all of whom now reside in the City of Wilmington aforesaid."

What is the interest of Mrs. Hinger in her late husband's residuary estate? It is clear in the first place that she has only a life estate. The will admits of no other construction. Even if a power of disposal be conceded to her, yet such power could not have the effect of defeating the remainder over by impliedly enlarging the life interest to an absolute one. It was so held by this court in *Newlin, et al., v. Phillips, (Del. Ch.)* 60 *A.* 1068. That ruling is in harmony with the general principle which, says Sugden in his work on *Powers (Volume* 1, *p.* 123), must be conceded, viz., "that the law does not incline to enlarge express estates by implication."

There can thus be no doubt that the interest of Mrs. Hinger is only one for life.

Does the will confer upon her a power, as contended by her solicitor, to exercise unrestricted control over the fund and to use the same in the same manner her husband could have done if living, the remaindermen being entitled to only that which she leaves unspent?

If she has such power, it is not to be found expressly conferred anywhere in the will. It must exist, if at all, by implication; and the only language upon which such implication can be hinged is the use by the testator of the word "enjoy." This word occurs in two places. It is first found in Item One, where the testator gives a life interest to his widow in the rest and residue, with power to sell the real estate and declares it to be his intention that "she shall enjoy all the rest and residue * * * for the period of her life"; and is again found in the same item where he proceeds to provide that if the real estate be sold the proceeds shall be re-invested and his wife shall thereafter "continue to enjoy the same for the remainder of her natural life."

How, it is asked, can the life tenant enjoy the rest and residue except by being allowed to use it? It seems to me the plain answer is that use in the sense of consumption is not the only possible method of enjoyment of a thing. One can certainly be said to enjoy property if he be given its yields, whether in the form of rents, income or profits. Where one interpretation of "enjoy" will lead to the possibility of a complete frustration of the testator's intent that the property shall remain intact for the benefit of ultimate remaindermen, it would appear to be entirely unwarranted that such an interpretation, rather than one which is in harmony with the testator's ultimate intent, should be adopted. In this will, the testator appears clearly to have desired that all of his residuary estate should remain intact for the remaindermen. The solicitor for the widow admits that this is so with respect to that portion of the residue which is in the form of real estate, because the will particularly provides that not only his real estate if not sold, but as well the identical securities in which the converted proceeds are invested in case of sale, shall enure to the benefit of his brothers and sisters in remainder after the widow's death. And so, it is conceded, that with respect to real estate and its proceeds, the widow's right to "enjoy" them does not by implication confer upon her a power of free disposition. If so, it is difficult to see how it would be proper to say that the word "enjoy" when previously used in connection with personalty along with realty, is to have a different implication with respect to the subject matter. In other words, if the testator once indicated that his use of the word "enjoy" did not carry the implication of the absolute right of control and disposition, it would seem that his prior use of the same word in the same item did not convey such implication.

It is to be noted further that Item Two of the will disposes of the rest and residue, after the death of his wife, in language that speaks of it as intact. It is apparently the same "rest, residue and remainder" given by Item Two after the wife's death, as was referred to in Item One where the "rest, residue and remainder" was given to the wife to be enjoyed by her for life. As it was to go over intact to the remaindermen under

Item Two, in order that it might do so the keeping of it intact during the widow's period of enjoyment would be necessary.

This will is not like many which are to be found in the books, of which *Newlin, et al., v. Phillips, supra,* is an illustration. In those cases some language is found indicating that what is intended for the remaindermen is only that which is left after the life beneficiary has gotten through with it, accompanied with language that discloses an intent that all or part of the estate may be disposed of. In all the cases I have examined favoring the life tenant's power, there is to be found some appropriate language in the testamentary provision which is so persuasive of an intent to confer a power of disposition on the life tenant to the prejudice of the remaindermen, that the courts have felt impelled to give it controlling weight. It is noticeable that the trend of recent authority is to look with greater favor upon a liberality of construction in support of the life tenant's right of disposition than formerly obtained. The rule appears once to have been that even where a power was conferred on a life tenant to dispose of the corpus of a personal estate for which a remainder was limited, such power was held to extend only to such disposal of the property as is consistent with a life interest. No less respectable authority than the United States Supreme Court announced this to be the governing rule in *Brant v. Virginia Coal & Iron Co.,* 93 *U. S.* 326, 23 *L. Ed.* 927, and *Smith v. Bell,* 6 *Pet.* 68, 8 *L. Ed.* 322. See also *Boyd v. Strahan,* 36 *Ill.* 355; *Burleigh v. Clough,* 52 *N. H.* 267, 13 *Am. Rep.* 23; *McKenzie's Appeal,* 41 *Conn.* 607, 19 *Am. Rep.* 525. It is doubtful, however, if such stringency of view would be supported by more modern authorities.

In none of the more recent cases that I have examined, however, excepting one, do I find that a liberality of construction in favor of the life tenant's power is hung on so slender a thread as the single word "enjoy." I have examined many cases of this general character and find only one that deduces from that one word a life tenant's power to deplete the corpus at the expense of the remaindermen. I refer to the case of *Board of Trustees of Westminster College v. Dimmitt,* 113 *Mo. App.* 41, 87 *S. W.* 536. In that case there was a bequest to the testator's widow "to

hold, possess and enjoy during her natural life" and after her decease a direction that the entire estate be converted into money and paid to the Board of Trustees of Westminster College. The court held that this language conferred a power on the widow to apply the estate in any way that would contribute to her well being and that it not appearing that any portion of her husband's estate was left in her own, her executor was not liable to account to the college. This result was based solely on the word "enjoy." I very much doubt the soundness of the conclusion in that case, not only because the word "enjoy" does not exclusively connote the idea of consumption, but as well because the two authorities cited by the deciding court in support of it appear on examination to be clearly distinguishable upon the character of the testamentary language with which they dealt.

It is not necessary, however, for me to decline to accept that case as persuasive here, for the reason that in this one, language is found as before noted which seems to indicate a desire on the testator's part that the rest and residue be kept together and passed on to the remaindermen in its undiminished entirety.

I conclude, then, that Mrs. Hinger has only a life interest in the sum which the complainant has on hand, with no power of disposition over it.

The only remaining question is whether the fund should be turned over to her for management, with or without security for its ultimate forthcoming for the benefit of the remaindermen, or whether a trustee should be appointed to receive it and hold it for the benefit of the life tenant and the remaindermen.

This question need not be discussed, for I took occasion in *Equitable Trust Co. v. Pennetto*, 16 *Del. Ch.* 218, 142 *A.* 827, to examine it rather extensively. A reference to that case will supply an answer to all the remaining questions.

Decree accordingly, costs on the estate.