No. 32,647

Lena Morton and Mary Terstreip, *Appellants*, v. Lillian
Flanagan et al., *Appellees.*

(55 P. 2d 373)

Opinion filed March 7, 1936.

*Ira C. Snyder,* of Manhattan, *James V. Humphrey* and *Arthur S. Humphrey,*
both of Junction City, for the appellants.

*E. B. Skinner,* of Junction City, for the appellees.

The opinion of the court was delivered by

Harvey, J.: This was an action to construe the will of Dora E.
Clancy. Omitting the formal opening, the will reads:

"I want Mrs. Lillian Flanagan appointed executrix of this will.

"Now, when all just ·debts are paid and this estate is to be settled, I want
all bonds to stand, as far as possible, as they are. There is one insurance
policy in the Security Benefit Association and one in the Metropolitan In-
surance Company. There is also money in the post office. Mrs. Lillian
Flanagan is to have the distributing of this to be held as her own.

"$500 to M. F. Mickey, Chicago, Ill.

"$500 ᵗo David Mickey, Junction City, Kans.

"$500 to Miss Bernice Robinson, Junction City, Kans."

The instrument was properly signed and witnessed and was duly
admitted to probate. The property of the testatrix consisted of

household goods, appraised at $348; two bonds of a building corporation; fifteen certificates of preferred stock in utility corporations, a participating certificate in a failed bank, six postal savings certificates, two life insurance policies, and two accounts; all appraised at $6,920.01; and two tracts of real property, one appraised at $600 and the other at $2,000.

The trial court held the will bequeathed to Lillian Flanagan the personal property above mentioned, appraised at $6,920.01, the bequest being charged with the payment of $500 each to M. F. Mickey, David Mickey and Bernice Robinson, and that the testatrix died intestate as to the real property.

Plaintiffs are sisters and heirs at law of the testatrix. They have appealed, and contend the testatrix died intestate as to all her property except the three $500 bequests. Lillian Flanagan, by a cross appeal, contends the will bequeathed and devised to her all the real and personal property of the testatrix, charged with the payment of the three $500 bequests.

The testatrix was the widow of a former United States army officer; one of her sisters lived in Texas, the other in Illinois; she left no children surviving her. Mrs. Flanagan was a friend and neighbor of testatrix. The will was executed about two weeks before the death of the testatrix, and while she was a patient in the Station Hospital at Fort Riley, suffering from cancer, chronic heart ailment and pneumonia. She dictated the will to a nurse, who is a stenographer. The will is in the language of the testatrix; it appears she had no instructions or advice from anyone as to the wording; the punctuation is that of the stenographer.

Our duty, like that of the trial court, is to interpret this will and to determine what the testatrix meant by the language used. The first paragraph of the will nominates Mrs. Lillian Flanagan as executrix; no question is raised about that. Taking up the next paragraph: The first sentence reads, "Now, when all just debts are paid." This indicates that testatrix intended and fully expected that *her* just debts would be paid out of *her property* before anything else would be done with it—as the law provides—"and this estate," obviously meaning *my* estate, "is to be settled, I want all bonds to stand, as far as possible, as they are." This expresses a wish of the testatrix. The inventory, which we may look to as an aid to interpretation of a will drawn under the circumstances this one was (*Donohue v. Donohue,* 54 Kan. 136, 37 Pac. 998), perhaps

discloses the reason for this wish. The two bonds, appraised at $800, had a face value of $1,000. The shares of preferred stock, which the trial court found the testatrix meant to include in the term "bonds" as used in the will—a question we find unnecessary to decide—were appraised at 25 to 27 percent of their face value. Obviously the financial depression had greatly decreased the market value of such property. Perhaps testatrix knew this and thought it good business not to sell them at once. But whatever the reason for it, she simply expressed the wish that they "stand;" that is, be held by whoever got them, "as they are," and not be sold, unless necessary, at the time her estate should be settled. The next two sentences, as the will is printed, simply serve to advise the executrix of some of the property of the testatrix which the executrix otherwise might not know about—two life insurance policies, with the names of the insurance companies, and "money in the post office." This, no doubt, refers to the six postal-savings certificates, of the value of $2,400, shown in the inventory. Up to this point the will has not bequeathed or devised any property to anyone. The parties agree that the remainder of the will makes three specific bequests of $500 each. This was the view of the trial court, with which we agree. The word "this" was construed by the trial court as meaning the "bonds" (including certificates of stock), the proceeds of the insurance policies, and the "money in the post office" mentioned earlier in the paragraph. We see no reason why it does not refer back to the words "this estate," meaning the estate of the testatrix, used earlier in the paragraph, and such is our interpretation. The thought that Mrs. Flanagan was personally bequeathed and devised "this," with full title to be held as her own individual property, is not consistent with the thought that she "is to have the distributing of this," and is also inconsistent with what follows.

Naturally, we presume the testatrix had some definite thing in mind which she desired to express with reasonable clearness. Since the testatrix in dictating the will gave no attention to punctuation, we, in interpreting the will, may ignore or change the punctuation marks used by the typist if by doing so we can get a more intelligent understanding of the language used. (*Holt v. Wilson*, 82 Kan. 268, 272, 108 Pac. 87.) It is clear the period after the word "own" should be a comma or semicolon; otherwise what follows is simply a tabulation, disconnected from words indicating a gift, or directing distribution of the sums mentioned to the parties named.

A testator is presumed not to have intended to disinherit his heirs at law, but this presumption yields to the manifest intention of the testator gathered from the express words of the will. (28 R. C. L. 229; *Godfrey et al. v. Epple et al.*, 100 Ohio St. 447, 126 N. E. 886.) This will contains no words which clearly express such an intention.

It is also the rule, rather than the exception, that a gift in a will to an executor is deemed to be to him in his official capacity instead of being given to him personally. In *Thomas v. Anderson*, 245 Fed. 642, the pertinent headnote reads:

"It is a cardinal rule that a devise of property to an executor is presumed to be given to him in trust, and not privately, and, in order to justify a court in reaching a contrary conclusion, there must be language in the will which clearly expresses such an intent."

See, also, 3 Jarman on Wills (7th ed.), p. 1599; 69 C. J. 223; *Beakey v. Knutson,* 90 Ore. 574, 177 Pac. 955; *Christman v. Roesch,* 198 N. Y. 538; *In re Megrue's Estate,* 237 N. Y. Supp. 523; *Gilman v. Gilman,* 99 Conn. 598, 122 Atl. 386; *Thayer v. Fairchild,* 25 R. I. 509, 56 Atl. 773; *F. A. Billingslea v. W. B. Moore,* 14 Ga. 370; *Helsey et al. v. The Convention of Prot. Epis. Church et al.,* 75 Md. 275, 23 Atl. 781; *Patton v. Williams and Wife,* 3 Munf. (17 Va.) 59; *General Clergy Relief Fund v. Sharpe,* 43 App. D. C. 126; *Finklea v. Jordan,* 14 Rich. Eq. (73 S. C., old series) 160.

These authorities sustain the view that while a testator may make a bequest or devise to a person nominated in the will to be the executor, with the intention that the person individually will be the absolute owner of the property bequeathed or devised—a thing which is done frequently—the language used in the will must clearly express such an intention. The will in question does not use language which clearly expresses an intention of the testatrix to give her estate, or any specific part of it, to Mrs. Flanagan to be her sole and separate property. It is only when one attempts to give such a meaning to the language used that confusion arises, bringing up such questions as: What was bequeathed or devised to Mrs. Flanagan—the entire estate of the testatrix, or only a part of it; and if so, what part? What did the testatrix mean by saying that Mrs. Flanagan is to have the distributing of this? If all the personal property other than the household goods was to belong to Mrs. Flanagan individually, was she to pay the three $500 specific bequests out of that property, or are those items to be paid out of

the household goods and the real property? These confusing questions can none of them be answered with certainty. We avoid all this confusion by following the view that any gift to an executor is deemed to be to him in his official capacity, unless a contrary intention clearly appears from the language used. Rewriting the last part of the will before us with these authorities in mind, and correcting the punctuation, it will read:

"Mrs. Lillian Flanagan is to have the distributing of this [estate] to be held [for the purpose of distribution] as her own; $500 to M. F. Mickey, Chicago, Ill.; $500 to David Mickey, Junction City, Kans.; $500 to Miss Bernice Robinson, Junction City, Kans."

These three specific bequests dispose of $1,500 of the testatrix's estate. Since she did not name the other persons to whom the remainder of her estate should be distributed, and since her heirs at law are entitled to it, under the law, the distribution of the remainder of the estate should be made to the heirs at law. Mrs. Flanagan has no right or title to any of the property except for the purpose of making distribution. We regard this as the correct interpretation of the will, and it is in harmony with the legal principles and the authorities above mentioned.

The judgment of the trial court will be reversed with directions to enter judgment in harmony with the views herein expressed. It is so ordered.