96 A.2d 741 (1953)
SAPP et al.
v.
SAPP et al.
Court of Chancery of Delaware, Kent.
May 12, 1953.
William Watson Harrington and Max Terry, of Dover, for plaintiffs.
George M. Fisher, of Dover, and Wesley E. Thawley, of Denton, Md., for defendants.
*742 BRAMHALL, Vice Chancellor.
Under the last will and testament of Ora C. Sapp, deceased, testator provided as follows:
"I Give, devise and bequeath unto my beloved wife Elva S. Sapp, all the rest and remainder of my estate whatsoever, and wheresoever the same be found, whether Real, Personal or mixed, to possess, use, enjoy, and occupy as her own, and if necessary for her comfort to convey by deed any or all my Real estate so devised to her in this my will, as though I myself was living and conveying the same; Should there however be anything remaining after the decease of the said Elva S. Sapp, then in that case I hereby give and devise the same to my Brother, Wilbert H. Sapp of the Town of Wyanett, in the State of Illinois."
Elva S. Sapp was designated as executrix and duly qualified. Her accounting shows that the assets of the estate were distributed to her as the sole devisee.
Wilbert H. Sapp, brother of Ora C. Sapp, to whom the testator Ora C. Sapp devised anything remaining in his estate after the death of his widow, survived testator, but died in 1938, testate, devising and bequeathing the remainder of his estate to his widow, Martha C. Sapp, absolutely. Martha C. Sapp, for consideration, assigned all her right, title and interest in the estate of Ora C. Sapp, to Robert Baynard Smith.
*743 Elva S. Sapp subsequently married Solomon L. Sapp. She died on August 3, 1951, leaving a last will and testament, the pertinent part of which is as follows:
"If now (sic) other will made by me I want my husband Solomon L. Sapp to have the income from all my investments except the ones I name here
 R. Baynard Smith 1 Five thousand U. S. Bond
 William F. Smith 1 Five thousand Registered Bond
 Robert H. Smith 1 Five thousand Registered Bond
 Katherine Smith 1 Five thousand Registered Bond
* * * The remainder or all the rest off the things & furniture is to stay in the house so long as my husband occupy it at his death or ceases to occupy same the House & lot and all in it will go to Baynard & Katherine Smith
Bank Stock 20 Shares to Wm. F. Smith
 " " 20 Shares to Robert H. Smith
 " " 20 Shares to Katherine M. Smith
Bank Stock 5 shares to Wm. Smith
 and Robert Smith children
The remainder off my Peoples Bank Stock goes to Baynard Smith Solomon Sapp my husband & Baynard Smith will settle my estate at my husband death Baynard my only heir will have the full amount of my Estate."
Included in the assets of the estate of Elva S. Sapp was a certificate for ninety-one shares of the capital stock of the Peoples Bank of Harrington, Delaware, which she derived from the estate of her first husband, Ora C. Sapp. The assets of her estate also included two bank deposits, one a savings account, for the sum of $9,618.72, and the other a checking account for the sum of $7,719.60. There was also in cash in the safe deposit box of testatrix the sum of $1,210.
In the consideration of the request by the executors the following questions are presented:
(1) The right of Elva S. Sapp to the personal property which she received from the estate of Ora C. Sapp, remaining in her possession at the time of her death.
(2) In what property does a life estate pass to Solomon L. Sapp under the last will and testament of Elva S. Sapp?
(3) The right of the Smith children in the shares of stock of the Peoples Bank of Harrington.
(4) Is Solomon L. Sapp entitled to the income for life on the interest deposit of Elva S. Sapp in the Peoples Bank of Harrington?
I shall first consider the estate which Elva S. Sapp received under the last will and testament of Ora C. Sapp. In that will testator devised and bequeathed to his widow the remainder of his estate "to possess, use, enjoy and occupy as her own, and if necessary for her comfort to convey by deed any or all my real estate so devised to her in this will, as though I was living and conveying the same". He then provided that upon the death of Elva S. Sapp, "should anything remain", it should go to his brother Wilbert H. Sapp, in fee. Plaintiffs contend that the gift to Elva S. Sapp constituted a fee simple estate arising out of a general gift to her, with an unrestricted power of sale implied in the use of the phrases "as her own", "as though I were living", and "should anything remain". Defendants, while admitting that the language of the will, standing alone, would create a fee simple estate, assert that the will must be construed as a whole; that such construction clearly indicates that the testator intended to give his widow a life estate only.
*744 The language used by testator is undoubtedly sufficient to vest in the widow an absolute interest in the residuary estate. She could have consumed all of the estate had it been necessary for her to do so. She did not see fit to do this. I must therefore look to the will as a whole for an indication of testator's intention. Newlin v. Phillips, Del.Ch., 60 A. 1068; Shaw v. Hughes, 12 Del.Ch. 145, 108 A. 747.
Testator provided that his widow should have a right to possess, use, and enjoy the personal property and occupy the real estate as her own. He further provided that in the event that she did not consume all of the estate during her lifetime any part remaining should go to his brother in fee. This is an indication that he expected or anticipated that there might be a balance remaining at the death of his widow. The words "possess, use, enjoy and occupy as her own" would of course under some circumstances indicate absolute ownership. They are also capable of the construction that they relate to the use and enjoyment of the estate by the widow in her lifetime. Hinger v. Hinger, 17 Del. Ch. 62, 149 A. 430. I must accept the construction which will harmonize, if possible, with other provisions of testator's will. Newlin v. Phillips, supra.
Plaintiffs assert that the words "as their own" as used in conjunction with the words "possess, use, enjoy and occupy" indicate clearly the intention on the part of testator to give to his widow an absolute estate and that therefore any remainder over is mere surplusage. The word "own" is a generic term, embracing within itself several gradations of title, dependent upon the circumstances. Its common meaning, as defined by Webster's New International Dictionary (2d Ed.) is "to possess; to have or hold as property * * *". Bird v. Wilmington Society of Fine Arts, 28 Del.Ch. 449, 43 A.2d 476, 483. It does not necessarily mean ownership in fee simple. United States v. Ninety-Nine Diamonds, 8 Cir., 139 F. 961, 971, 2 L.R.A.,N.S., 185. I interpret testator's language to mean that his wife could enjoy and use his estate in the same manner and to the same extent as if she were the owner thereof. See Fassitt v. Seip, 240 Pa. 406, 87 A. 957. This interpretation is not strained; it is not in conflict with the provision as to the remainder. It gives effect to all of the provisions of testator's will. It is in harmony with testator's general intent or purpose. See Newlin v. Phillips, supra.
Testator undoubtedly intended that his wife should have every use and enjoyment of his estate that he himself had while living. If necessary for her comfort, she could have consumed all of it and, for her comfort, could have conveyed a fee simple title to a bona fide purchaser. However, she died in possession of this estate and undertook to dispose of it by her will. Not having consumed the estate in her lifetime, she cannot now dispose of it by will. Testator provided that the estate remaining after his widow had died should go to his brother. His brother, after his widow, was the natural recipient of his bounty. It is indicated clearly in the will that the testator intended to provide fully for his wife during her lifetime, even, if necessary, to the extent of depleting his entire estate. But it is also indicated that testator desired whatever should remain of his estate after his widow had been provided for, upon her death, to go to his brother, absolutely.
Plaintiffs distinguish this case from the cases of Newlin v. Phillips, supra, and Shaw v. Hughes, supra, by saying that in this case there is an implied power of sale of the personal property by reason of the authority of the widow to consume the estate. Assuming this to be true, it would seem that there would be a general implied power of sale in all cases where the life tenant has the right to consume the corpus, including the Newlin and Shaw cases. Since the question of an implied power of sale under such circumstances is not raised in either of these cases, I shall not consider them as authority in this respect. It is true that a general power of sale in executors will be implied when the duties imposed upon them cannot be performed without making a sale. Hilles v. Hilles, 11 Del.Ch. 159, 98 A. 296. My *745 difficulty with plaintiffs' contention is that I find nothing in the will which makes it necessary that the estate be sold. Testator provided for his wife and upon her death for his brother. Their interest included the whole of testator's estate. There is no provision in the will which would necessitate a sale.
I conclude that there is no general implied power of sale in the will of Ora C. Sapp. Such being the case, the remainder of testator's estate goes to the assignee of the widow and sole devisee of testator's brother, Robert Baynard Smith.
I next consider that portion of the will of Elva S. Sapp relative to seventy-three shares of stock of the Peoples Bank of Harrington acquired by her other than from the will of Ora C. Sapp.
Under her last will and testament Elva S. Sapp bequeathed to her husband Solomon L. Sapp "the income from all my investments except the ones I name here". Testatrix then named four persons, to each of whom she gave a $5,000 government bond. Then follows certain absolute gifts of certain silverware, dishes, glassware, jewelry, etc. to various named persons. Testatrix then provided that her other personal belongings and furniture should remain in her house as long as her husband should occupy it and that upon the death of her husband the house with these belongings should go to two other persons in fee simple. Testatrix then provided as follows:
"Bank Stock 20 Shares to Wm. F. Smith
 " " 20 Shares to Robert H. Smith
 " " 20 Shares to Katherine M. Smith
Bank Stock 5 shares to Wm. Smith and Robert
 Smith children
"The remainder off my Peoples Bank Stock goes
to Baynard Smith".
Testatrix then bequeathed to Baynard Smith all her estate remaining after the death of her husband. She also named him, along with her husband, as executor.
The question here involved is whether or not the provisions of the will of testatrix relative to the Peoples Bank stock is subject to the life estate of her husband, Solomon L. Sapp.
It is apparent that the will of testatrix was not drawn by an attorney. It will also be observed that with the exception of one comma there are no punctuation marks in the whole will. I also note that the names of the four persons immediately following the gift of the life estate to her husband are indented or set back. The provisions following are each set forth in a separate paragraph, beginning at the beginning of the line. This is also true of the bequest of the stock of the Peoples Bank of Harrington.
An examination of the whole will discloses that it was the intention of the testatrix that her husband should have a life estate in all her investments with the exception of the four $5,000 liberty bonds. With the exception of five shares of bank stock which testatrix gave to the children of William Smith and Robert Smith, the bequest of the bank stock was to the same persons as named in the gift of the government bonds. If the testatrix had intended that the bank stock was to be an absolute gift and not subject to the life estate, she could easily have so provided in that portion of her will providing for the gift of the government bonds. That she did not do so is an indication of the fact that she did not intend the gift of the bank stock to be absolute.
A more intelligent understanding of the language used by testatrix may be reached by the use of punctuation marks. See Morton v. Flanagan, 143 Kan. 413, 55 P.2d 373, 104 A.L.R. 111; Palmer v. Crews, 203 Miss. 806, 35 So.2d 430, 4 A.L.R.2d 483. By supplying the punctuation necessary to give effect to the intention indicated by a study of the will as a whole, the intent of the testatrix becomes clear. In many of the bequests which testatrix made, the name of the legatee is first given, followed by the article of personal property to be received by that particular legatee. She followed the same procedure in that portion of her will relative to the bonds. By adding a colon after the words "except the ones I name here" and after the name of each legatee the paragraph in question would then read as follows:
"If now (sic) other will made by me I want my husband Solomon L. Sapp to have *746 the income from all my investments except the ones I name here:
R. Baynard Smith: 1 Five thousand
 U. S. Bond
William F. Smith: 1 Five thousand
 Registered Bond
Robert H. Smith: 1 Five thousand
 Registered Bond
Katherine Smith: 1 Five thousand
 Registered Bond".
There are two other factors, which, while perhaps not of themselves of sufficient importance to be controlling, nevertheless tend to indicate testator's intention. The first is the use by testator of the word "all" before the words "my investments". The use of this word under such circumstances tends to give emphasis to this provision of the will. See Bird v. Wilmington Society of Fine Arts, supra. The second is the fact that Solomon L. Sapp was the husband of testatrix. There is nothing, in the will or otherwise, to show any intention on the part of testatrix not to provide for him. In the absence of any indication of such intention, it is certainly a natural assumption that the testatrix intended to provide adequately for her husband.
Defendants urge that the use after the provision as to the bank stock of the words "the remainder of my Peoples Bank Stock goes to Baynard Smith" when in a later provision Baynard Smith is given the whole remainder of testatrix' estate, indicates a contrary intention on the part of testatrix. I do not agree. It is true that as far as the remainder is concerned, this provision relative to the bank stock was unnecessary. However, this is not repugnant to the later provision in which Baynard Smith is given the whole of the remainder; it is merely surplusage. In the provision relative to the bank stock, testatrix did not otherwise provide for the whole of her bank stock. It will be presumed that the testatrix desired in that part of her will to show a disposition of the whole of her bank stock remaining after the fulfillment of these provisions. This construction is consistent with the general scheme of the will of testatrix to provide for her husband during his lifetime. There is nothing in the body of the will itself, other than these exceptions, to indicate an intention on the part of testatrix to give to the family receiving the remainder an absolute gift of the bank stock. The fact that there was no such indication indicates that such was not intended.
Relative to the provision giving five shares of the bank stock to the five children of William Smith and Robert Smith, it is conceded by the parties in their briefs that testatrix intended the five shares of stock to be divided among the five children. Since I agree with this interpretation, I see no reason for discussing this question in detail.
I next consider the question of whether or not the savings deposit which testatrix had at the time of her death in the Peoples Bank of Harrington is a part of the life estate bequeathed by testatrix to her husband. In her will testatrix provided that all her "investments", with certain exceptions, should go to her husband for life. The question for determination is whether or not the words "all my investments" includes the interest deposit.
Broadly speaking, an investment usually means the sum invested or the property purchased by the laying out of money or capital in some species of property for income or profit. Tippett v. Tippett, 24 Del. Ch. 115, 7 A.2d 612. Usually, however, its meaning must be determined from the context of the will. Genessee Trustee Corporation v. Smith, 6 Cir., 102 F.2d 125.
The will in question is not the product of a skilled draftsman. Unless the interest deposit be included in the words "all my investments", there is no provision in the will of testatrix for anyone to receive the income therefrom during the life of the husband of testatrix. A liberal interpretation is indicated. The only part of her will which might be termed a residuary clause is the last sentence thereof in which she provides that all of her estate shall go to a named beneficiary after the death of her husband. It will be assumed that testatrix intended for someone to have the income from all of her estate prior to the time when the remainder would take effect. Since there is no provision in the remainder *747 relative to this income and no specific bequest, either of principal or income, relative to this deposit, it therefore follows that the provision giving the husband the income from "all my investments" for life is the only clause to which the income from the interest deposit could attach. The extension of the meaning of the term "investments" so as to include bank deposits is consonant with the intention of the testatrix to dispose of all of her property. In re Owen's Estate, 178 Misc. 957, 36 N.Y.S.2d 60, 62.
The case of Owen's Estate, supra, is in point. There the clause for determination was of "investments in the United States". Testatrix made no provision otherwise for her bank deposit. Testatrix drew her own will. The court, in holding that the bank deposit constituted a part of "investments in the United States", stated that to make a strict construction of the term "investments" would produce intestacy, which obviously was not the intention of the testatrix. Here, while there is no intestacy as to the remainder, there is no other provision relative to the income from the interest deposit. I therefore conclude that it was the intention of the testatrix that her husband should have the entire income from her estate, other than the exceptions specifically set forth, during the term of his life and that since the clause "all my investments" is the only vehicle in the will of testatrix through which the intention of testatrix may be given effect, testatrix intended by these words to include the interest deposit. The husband is therefore entitled to the income from this deposit during the term of his life.
I am also requested to determine whether or not the bequest by Elva S. Sapp to her husband Solomon L. Sapp of "all my investments" with certain exceptions set forth in the will of Elva S. Sapp, constitutes a specific legacy. A specific legacy has been defined as a bequest of a particular thing or a specified part of a testator's estate which is so described as to be capable of identification from all others of the same kind. It may be satisfied only by the delivery of the specific object, fund, or portion designated and not by the receipt of some equivalent in money or property. See cases cited in 57 Am.Jur. (Wills), Sec. 1401, p. 935; 69 C.J. (Wills), Sec. 2091(d), p. 924. A bequest of a sum specifically identified, though its precise amount is not ascertained at the time the will is executed, is a specific legacy. Cooper, Executor v. Bishop, 19 Del.Ch. 98, 163 A. 644. With the exception of the specific gifts above referred to, testatrix bequeathed to her husband all of her personal estate, with the exception of a bank deposit and certain cash in a safe deposit box. No provision was made as to the latter and the amount thereof is not sufficient to pay the indebtedness of the estate. In effect, therefore, the bequest by testatrix to her husband constitutes a gift of the income from all her personal estate. Testatrix used the word "investment" in its broadest and most comprehensive sense. Giving it the meaning which I construe that testatrix intended to give it, it embraces all kinds of property in which wealth may be invested and from which an income is derived. See Una v. Dodd, 39 N.J.Eq. 173, 186; Warmolts v. Holt, 133 N.J.Eq. 597, 34 A.2d 225, 228.
Plaintiff relies upon the use of the word "my" as indicating that the gift was specific. It is true that by the use of the word "my", or other similar words indicating that the testator is referring to a specific article or object owned by him, testator often indicates his intention to create a specific legacy. See cases cited in 4 Pomeroy on Equity Jurisprudence (5th ed.), Sec. 1130, p. 349. But that is not true where, as here, it was the intent of the testatrix to make a general bequest. Moreover, there is a definite exception to this rule with respect to gifts of "all" or the "remainder" of "my personal property", the accepted view being that gifts in that form are to be regarded prima facie as general rather than specific. See Conway v. Shea, 282 Mass. 25, 183 N.E. 717, 88 A. L.R. 551. See also Cooch's Ex'r v. Cooch's Adm'r, 5 Houst. 540.
Plaintiffs rely upon the case of Cooper, Executor v. Bishop, supra, as supporting their contention. In that case testator provided that all his real estate not otherwise disposed of by his will be sold and that the proceeds thereof, after the payment of *748 debts, be divided among his widow and his children. In the Bishop case, as stated by the Chancellor, there was a conversion of the real estate with a direction to divide the funds in the manner provided by testator. Although the amount had not been ascertained, the fund itself was ascertainable. There was also no general intention on the part of the testator to set up in that section a residuary estate, since, as the Chancellor also noted, a residuary estate was set up in the paragraph following. Here, testatrix bequeathed all her personal estate, with certain exceptions, to her husband, for life. The only residuary clause in the will is the provision for the remainder after the death of the life tenant, her husband. The bequest was therefore a general bequest. I therefore do not consider this case apposite.
I conclude that the bequest of the life estate to the husband of testatrix was a general and not a specific bequest.
An order will be signed, on notice, in accordance with this opinion.